# Exhibit B



**SUMMONS**

### IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

### IN AND FOR NEW CASTLE COUNTY

DAKOTA IMAGING, INC.,

               Plaintiff

VS.

SANDEEP GOEL and PRADEEP GOEL,

               Defendants

CIVIL ACTION NO. 1232-N

**SUMMONS**

**TO THE** SPECIAL PROCESS SERVER

**YOU ARE COMMANDED:**

To Summon the above named defendants so that, within 20 days after service hereof upon defendants, exclusive of the day of service, defendants shall serve upon Michael R. Robinson, Esq. , plaintiff's attorney whose address is One Rodney Square 920 N. King Street Wilm, DE 19801 an answer to the complaint.

To serve upon defendants a copy hereof and of the complaint.

**TO THE ABOVE NAMED DEFENDANTS:**

In case of your failure, within 20 days after service hereof upon you, exclusive of the day of service, to serve on plaintiff's attorney named above an answer to the complaint, judgment by default will be rendered against you for the relief demanded in the complaint.

Dated April 8, 2005

_____
Register in Chancery

CIVIL ACTION NO. 1232-N

DAKOTA IMAGING, INC.

Plaintiff

VS.

SANDEEP GOEL, ET AL

Defendant

SUMMONS

Please effectuate service upon:

1. Sandeep Goel
2. Pradeep Goel

SERVICE TO BE COMPLETED BY
SPECIAL PROCESS SERVER

Michael R. Robinson, Esq.

Attorney for Plaintiff

IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE
IN AND FOR NEW CASTLE COUNTY

DAKOTA IMAGING, INC.                     )
                                         )
        Plaintiff,                       )    Civil Action No. _____
                                         )
    v.                                   )
                                         )
SANDEEP GOEL and PRADEEP GOEL,           )
                                         )
        Defendants.                      )

## COMPLAINT

### INTRODUCTION

1.    This suit involves claims for damages and injunctive relief by Dakota Imaging, Inc.

      ("Dakota") against two former officers for breach of their employment agreements,

      breach of fiduciary duty, enforcement of covenants in a merger agreement and

      misappropriation of trade secrets and confidential business information.

### PARTIES

2.    Plaintiff Dakota is a Maryland corporation with a principal place of business in

      Columbia, Maryland. Dakota is a wholly-owned subsidiary of Envoy Corporation

      ("Envoy"). Envoy, in turn, is a wholly-owned subsidiary of WebMD Corporation

      ("WebMD"). WebMD is a Delaware corporation.

3.    Defendant Sandeep Goel ("Sandeep") is, upon information and belief, a resident of the

      state of Florida with a principal residence in Boca Raton, Florida.

4.    Defendant Pradeep Goel ("Pradeep") is, upon information and belief, a resident of the

      state of Maryland with a principal residence in Ellicott City, Maryland.

5.      Dakota, Sandeep and Pradeep, along with Envoy and WebMD, all are parties to an

Agreement and Plan of Merger ("Merger Agreement") dated April 5, 2004. Dakota and

each of Sandeep and Pradeep are parties to employment agreements ("Employment

Agreements") dated the same day as part of the same merger transaction.

### JURISDICTION AND VENUE

6.      This Court has jurisdiction over this action against the defendants because the parties to

the Merger Agreement agreed that the federal or state courts of Delaware would have

exclusive jurisdiction over "all actions and proceedings arising out of or relating to this

Agreement."[1] [Merger Agreement § 10.8(b)]. Dakota's claims against Sandeep and

Pradeep in Counts I and II below for breach of their Employment Agreements and breach

of fiduciary duty arise out of or relate to the Merger Agreement because the Employment

Agreements are incorporated by reference in and attached as exhibits to the Merger

Agreement, because the Employment Agreements reference the Merger Agreement, and

because the Merger Agreement provided for the continued employment of Sandeep and

Pradeep as officers of Dakota. Furthermore, the Employment Agreements contain no

alternative forum for dispute resolution. Dakota's claims against Sandeep and Pradeep in

Count III below arise directly out of Sections 4.8 and 4.10 of the Merger Agreement.

### FACTUAL BACKGROUND

7.      Upon information and belief, as of mid-2003, Sandeep and Pradeep were two of the

principal shareholders of Dakota, which provided software and related services to

insurers and other payers in the health care industry. Sandeep was president and Pradeep

was chief operations officer ("COO") and chief technology officer ("CTO") of Dakota.

---

[1] Section 1.7(c) of the Merger Agreement provides for arbitration of certain disputes not involved in this action, with
the state and federal courts of Delaware designated to enforce the arbitration provisions.

US1DOCS 5015897v10

8.   On February 19, 2004, WebMD signed an exclusivity letter with Dakota in which the parties agreed to engage in exclusive negotiations for the sale of Dakota to WebMD, Envoy or an affiliate.

9.   Sandeep and Pradeep, including through their representatives, provided detailed financial and customer information to Envoy and WebMD in order to induce them to purchase Dakota.

10.  On April 5, 2004, WebMD, Envoy, Dakota, Sandeep, Pradeep, and two other Dakota shareholders executed the Merger Agreement.[2] The Merger Agreement provided that Envoy would pay a total of $40 million, with adjustments, for the stock of Dakota plus up to an additional $25 million through a three-year "earnout" based on increases in Dakota's earnings.

11.  The Merger Agreement provided that Sandeep and Pradeep would continue to serve as officers of Dakota after the merger, but that Envoy would be entitled to "manage and operate [Dakota] and its businesses in its sole and absolute discretion." [Merger Agreement §1.7(d)(1)].

12.  The Merger Agreement also provided that, with the exception of disputes over the "earnout," disputes arising out of or relating to the Merger Agreement would be resolved in the state or federal courts of Delaware. [Id. at § 10.8(b)]

13.  On April 5, 2004, the same day the Merger Agreement was signed, Dakota signed Employment Agreements with Sandeep and Pradeep. The Employment Agreements, which are referred to in the Merger Agreement and which in turn reference the Merger Agreement, provided that Sandeep would remain as president of Dakota and Pradeep as

---

[2] The Merger Agreement also included a transitional acquisition subsidiary, Raven Merger Sub, Inc., which was intended to, and did, disappear after the consummation of the merger.

3

COO and CTO if Envoy completed the acquisition of Dakota. Sandeep's Employment Agreement is attached hereto as Exhibit A. Pradeep's Employment Agreement is attached hereto as Exhibit B.

14.   After the signing of the Merger Agreement and the Employment Agreements, Sandeep and Pradeep arranged for Dakota to provide documents, including financial documents, for WebMD and Envoy to review during a "due diligence" period.

15.   On the basis of reasonable reliance upon the information provided by Dakota at the direction of Sandeep and Pradeep, WebMD and Envoy proceeded with the closing on the acquisition of the stock of Dakota.

16.   On April 30, 2004, the acquisition of Dakota took place. Envoy, through a subsidiary, paid $40 million, with adjustments, to the stockholders of Dakota.

17.   After the acquisition of Dakota by Envoy, and in accordance with the Employment Agreements, Sandeep continued as president and Pradeep as COO and CTO of Dakota. Under the Employment Agreement, Sandeep reported to the president of Envoy or his designee. Sandeep also reported to the board of directors of Dakota, which consisted of three persons appointed by WebMD and Envoy.

18.   In violation of their Employment Agreements, after the acquisition of Dakota by Envoy, Sandeep and Pradeep failed to devote their full business time and attention to Dakota and failed to use their best and most diligent efforts to promote the interests of Dakota.

19.   On June 4, 2004, approximately five weeks after the acquisition, Dakota provided Envoy with a forecast for the quarter ending June 30, 2004, which showed projected software revenue at substantially below plan. This forecast was the first time that Envoy received information that Dakota was not expected to achieve the revenue projections which had

4

formed a material basis for Envoy's acquisition of Dakota. When WebMD's Chief

Financial Officer ("CFO") asked Dakota's CFO why Dakota was not meeting its

projections, Dakota's CFO answered that Dakota should not have provided those

projections to WebMD and Envoy because Dakota management knew they were too

aggressive and did not believe them.

20. In the second half of 2004 and early 2005, Envoy advised Sandeep and Pradeep in

writing that Envoy suspected that they had failed to make full disclosure of key facts

related to the financial position of Dakota, in violation of the Merger Agreement.

21. In early 2005 Envoy learned of misconduct by Sandeep and Pradeep after the merger,

including that:

   (a)   In March 2005, Sandeep and Pradeep instructed Dakota employees to make for

         them copies of certain financial information, principally pre-merger financial

         information, in the computer hard drives of Dakota's former Chief Financial

         Officer and former Controller and then delete the information from such hard

         drives. Sandeep told at least one such employee that he did not want WebMD to

         obtain such financial information.

   (b)   On or about March 14, 2005, Pradeep, with Sandeep's knowledge, arranged,

         through employees at Dakota, that a copy be made of Dakota's confidential

         source code for a software product soon to be released. Sandeep and Pradeep had

         no legitimate business reason to do so. This conduct threatened Dakota's

         confidential and proprietary business interests because the source code would

         enable Pradeep or a third party to duplicate the software product and sell it

         competitively against Dakota.

(c)     On or about March 28, 2005, three days before the close of the first "earnout"
        period under the Merger Agreement, Sandeep, in the presence of Pradeep,
        directed Dakota's purchasing personnel to violate Dakota policy by purchasing
        almost $150,000 of equipment for a prospective software customer without prior
        execution of a customer contract and without Envoy approval. Sandeep told the
        purchasing personnel specifically not to tell WebMD about the purchases.

(d)     Sandeep and Pradeep sought to undermine the authority and/or directives of the
        Dakota Board and Envoy's President by, among other things, criticizing Envoy's
        business decisions, refusing to carry out reassignment of certain employees (in
        particular Dakota's CFO) by Envoy, and failing to carry out Envoy's sales
        directives.

(e)     Sandeep and Pradeep failed to disclose to Envoy that they had decided to
        discontinue backup protection for Dakota's software and BPO products. As a
        consequence, in March 2005 when Dakota suffered a computer crash it also
        suffered a resulting loss of customer data which cost the company substantial loss
        of good will with customers, substantial out of pocket costs to recover the data
        and other indirect costs. Upon information and belief, Sandeep and Pradeep
        discontinued the backup security in order to reduce expenses and artificially
        improve Dakota's earnings for purposes of increasing their likelihood of
        achieving an earnout payment under the Merger Agreement.

(f)     Sandeep and Pradeep made misrepresentations to several key customers about the
        existence of a backup security system.

6

22.    Sandeep and Pradeep did not disclose to Envoy or WebMD information which Sandeep and Pradeep knew and which they knew or should have known Envoy did not know, and which Sandeep and Pradeep knew would have a material negative impact on Dakota and its affiliates, in violation of Section 7.1 of the Employment Agreements.

23.    As a result of Sandeep's and Pradeep's repeated misconduct, on April 6, 2005, Dakota's board of directors met with Sandeep and Pradeep and terminated their Employment Agreements for cause. Such cause included:

   (a)    intentional acts or intentional failure to act which Sandeep and Pradeep performed in bad faith and which were injurious to or contrary to the best interests of Dakota [Employment Agreements at § 4.1(i)];

   (b)    fraudulent, dishonest, unethical or disloyal dealings with Dakota [Id. at § 4.1(iii)]; and

   (c)    willful failure to communicate with Dakota's Board of Directors regarding the business of Dakota [Id. at § 4.1(v)].

24.    The termination letter to Sandeep is attached hereto as Exhibit C. The termination letter to Pradeep is attached hereto as Exhibit D.

## COUNT I
## BREACH OF EMPLOYMENT AGREEMENTS

25.    Dakota restates and incorporates by reference the allegations in paragraphs 1-24.

26.    Sandeep and Pradeep breached their Employment Agreements with Dakota, including by:

   (a)    Failing to devote their full business time and attention to Dakota;

   (b)    Failing to use their best and most diligent efforts to promote the interests of Dakota, Envoy and WebMD;

7

(c)    Engaging in fraudulent, unethical and disloyal conduct injurious and contrary to the interests of Dakota;

(d)    Willfully failing to communicate relevant facts to the Dakota Board of Directors;

(e)    Failing to disclose material negative information to Envoy and WebMD; and

(f)    Taking steps to misappropriate confidential and proprietary information from Dakota for their own purposes.

27.    Dakota suffered financial injury as a result of these breaches.

28.    Dakota is entitled to recover damages against Sandeep and Pradeep for their breaches of their Employment Agreements.

29.    The conduct of Sandeep and Pradeep prior to the termination of their employment, including attempted destruction of Dakota financial records, particularly pre-merger financial records, and copying of confidential and proprietary software source codes, demonstrates that without injunctive relief they are likely to undertake actions in violation of their Employment Agreements which will be harmful to the interests of Dakota.

30.    Dakota is entitled to injunctive relief, enjoining Sandeep and Pradeep from:

(a)    Taking from Dakota, using or disclosing any proprietary information as defined in Section 5.1(a) of the Employment Agreements, and as protected in Section 5.1(b);

(b)    Making disparaging comments to Dakota's customers and employees about Dakota, Envoy, WebMD and their respective directors, officers, and employees in violation of Section 5.1(d) of the Employment Agreements;

(c)    Soliciting employees, agents, consultants or customers of Dakota, Envoy or WebMD in violation of Section 5.2 of their Employment Agreements;

USIDOCS 5015897v10

(d)     Accepting competitive employment in violation of Section 5.3 of the Employment

         Agreements; and

(e)     Failing to return to Dakota any materials covered by Section 5.6 of the

         Employment Agreements.

## COUNT II
## BREACH OF FIDUCIARY DUTY

31.    Dakota restates and incorporates by reference the allegations in paragraphs 1-24.

32.    By virtue of their positions at Dakota and their Employment Agreements, Sandeep and

        Pradeep owed fiduciary duties to Dakota.

33.    Sandeep and Pradeep violated their fiduciary duties to Dakota by, among other things:

(a)     Placing their own financial interests ahead of the interests of Dakota;

(b)     Engaging in unethical and fraudulent misconduct detrimental to the interests of

         Dakota;

(c)     Failing to communicate relevant facts to the Dakota Board of Directors;

(d)     Taking steps to misappropriate confidential financial and proprietary information

         from Dakota for their own purposes; and

(e)     Directing subordinates to undertake inappropriate actions to benefit Sandeep and

         Pradeep at the expense of Dakota.

34.    Dakota has suffered financial injury as a result of Sandeep's and Pradeep's breaches of

        fiduciary duty.

35.    Dakota is entitled to recover damages against Sandeep and Pradeep for breach of

        fiduciary duty, as well as to obtain injunctive relief as set forth in Paragraph 30.

## COUNT III
## ENFORCEMENT OF MERGER COVENANTS

36.    Dakota restates and incorporates by reference the allegations in Paragraphs 1-24.

9

37. In Section 4.8 of the Merger Agreement, Sandeep and Pradeep agreed that they would not disclose or make use of any confidential knowledge, information or documents with respect to Dakota.

38. In Section 4.10 of the Merger Agreement, Sandeep and Pradeep agreed that for a period of five years after the closing date, they would not compete with Dakota.

39. Dakota is entitled to damages for any violations of these covenants and enforcement of the covenants in the Merger Agreement by way of injunctive relief.

## COUNT IV
## THREATENED MISAPPROPRIATION OF TRADE SECRETS

40. Dakota restates and incorporates by reference the allegations in paragraphs 1-24.

41. By virtue of their positions at Dakota and their Employment Agreements, Sandeep and Pradeep owed Dakota contractual and common law duties to maintain the confidentiality of Dakota's trade secrets, including the confidentiality of Dakota's computer source code.

42. In addition, Dakota's computer software and source code qualify as trade secrets pursuant to the Maryland Uniform Trade Secret Act, Md. Code, Commercial Law 11-1201, because:

    (a) They possess an economic and competitive value to Dakota derived from the fact that they are not generally known in the industry; and

    (b) Dakota has taken reasonable steps to maintain the secrecy of the computer software and source codes by, among other things, making employees sign agreements obligating them to protect the confidentiality of the computer software and source codes.

10

43.   Any dissemination of Dakota's source code to its competitors would allow them to duplicate Dakota's software programs and would irreparably harm Dakota's competitive position in the marketplace.

44.   On at least two occasions of which Dakota knows, Sandeep and Pradeep attempted to misappropriate Dakota's computer software and source codes by instructing their subordinates to inappropriately copy, for Sandeep and Pradeep's own use, software and source codes in violation of the their fiduciary duties to Dakota and Section 5.1(a)-(b) of their Employment Agreements. While these attempts failed, other attempts, unbeknownst to Dakota, may have succeeded.

45.   In light of Sandeep and Pradeep's past actions, Dakota's computer software and source codes are under threat of misappropriation and dissemination to its competitors, which would result in irreparable harm to Dakota.

46.   In order to alleviate the threatened misappropriation and dissemination of its computer software and source codes, Dakota is entitled to obtain injunctive relief as set forth in paragraph 30(a).

WHEREFORE, Dakota requests that this Court:

1.   Enter judgment in Dakota's favor;

2.   Award Dakota damages in amounts to be determined by the Court, plus interest, costs and reasonable attorneys' fees;

3.   Enter a preliminary and then a permanent injunction in favor of Dakota against Sandeep and Pradeep, enjoining them from:

11

(a)     Taking from Dakota, using or disclosing any proprietary information as

defined in Section 5.1(a) of the Employment Agreement and as protected

in Section 5.1(b) and Md. Code, Commercial Law 11-201.

(b)     Making disparaging comments to Dakota's customers or employees about

Dakota, Envoy, WebMD and their respective directors, officers, and

employees in violation of Section 5.1(d) of the Employment Agreements;

(c)     Soliciting employees, agents, consultants or customers of Dakota, Envoy

or WebMD in violation of Section 5.2 of their Employment Agreements;

(d)     Accepting competitive employment in violation of Section 5.3 of the

Employment Agreements; and

(e)     Failing to return to Dakota any materials covered by Section 5.6 of the

Employment Agreements or Md. Code, Commercial Law 11-1201; or

(f)     Violating the covenants in Sections 4.8 and 4.10 of the Merger

Agreement.

4.     Grant such and other relief as the Court deems just and proper.

Respectfully submitted,

OF COUNSEL:

Harry T. Daniels
Richard A. Johnston
Cytheria D. Jernigan
WILMER CUTLER PICKERING
HALE AND DORR LLC
60 State Street
Boston, MA 02109
(617) 526-6000

Dated:  April 6, 2005

Jesse A. Finkelstein (DSBA 1090)
Michael R. Robinson (DSBA 4452)
RICHARDS, LAYTON & FINGER,
P.A.
One Rodney Square
920 N. King Street
Wilmington, Delaware  19801
(302) 651-7700

*Attorneys for Plaintiff*
*Dakota Imaging, Inc.*

12