UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DAKOTA IMAGING, INC., ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 1:05-CV-296 (SLR) |
| ) | |
| v. ) | |
| ) | JURY TRIAL DEMANDED |
| SANDEEP GOEL and ) | |
| PRADEEP GOEL, ) | |
| ) | |
| Defendants/Counterclaim- ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| DAKOTA IMAGING, INC., ) | |
| ENVOY CORPORATION, and ) | |
| WEB MD CORPORATION, ) | |
| ) | |
| Counterclaim- ) | |
| Defendants ) | |
| ) | |

## PLAINTIFF AND COUNTERCLAIM-DEFENDANT DAKOTA IMAGING, INC.'S ANSWER AND AFFIRMATIVE DEFENSES TO COUNTERCLAIMS OF SANDEEP GOEL AND PRADEEP GOEL

Plaintiff/Counterclaim-Defendant Dakota Imaging Inc ("Dakota") hereby answers the allegations in the individual paragraphs of the Counterclaim of Sandeep Goel ("Sandeep") and Pradeep Goel ("Pradeep") (collectively, the "Goels") as follows.[1]

1. Dakota admits that Dakota was founded in or around 1989, but is without sufficient information to admit or deny the remaining allegations in the first sentence of Paragraph 1. Dakota is without sufficient information to admit or deny the allegations in the

---

[1] On May 16, 2005, the Goels removed this action from the Delaware Court of Chancery to the United States District Court for the District of Delaware based upon allegations of diversity. Concurrently with the filing of this Answer and Affirmative Defenses, Dakota has filed a motion to remand this action to the Delaware Court of the Chancery because the Notice of Removal failed to establish diversity jurisdiction. Dakota also has filed a motion to dismiss portions of the Counterclaim

second sentence of Paragraph 1, except to admit that the "Transform" software platform, in various iterations, including but not limited to "Transform," "Transform EZ" and "Transform DocIT" have been important revenue producing products for Dakota in recent years. Dakota admits that the various iterations of "Transform" are used to process medical claims, but is without sufficient information to admit or deny the remaining allegations because it does not know which iteration of Transform is being referred to and it does not understand the undefined term "exceptional utility." To the extent that there are any remaining allegations in Paragraph 1, they are denied.

2.      Dakota admits the allegations in the first sentence of Paragraph 2. With regard to the second sentence of Paragraph 2, Dakota admits that Dakota and Blue Cross Blue Shield of North Dakota ("Noridian") have a strong and effective business relationship that remains in place today after Dakota's termination of the Goels' employment.

3.      Dakota admits that Dakota has focused on the healthcare insurance claims processing market and over the years built a reputation among some in the Blue Cross Blue Shield market for innovation and personal service, but denies that this reputation was or is universal in the market. With regard to the second sentence in Paragraph 3, Dakota admits that Dakota has focused on technology innovations and personal service in the healthcare claims processing software market and has been among a group of companies at the forefront of this field. To the extent that there are any remaining allegations in Paragraph 3, they are denied.

4.      Dakota admits that Dakota grew from a small company through the 1990s and early 2000s and became one of a number of successful document processing software company

in the medical claims processing field. To the extent that there are any remaining allegations in Paragraph 4, they are denied

5.  Dakota admits the allegations in the first two sentences in Paragraph 5. With regard to the third sentence in Paragraph 5, Dakota admits that Dakota has approximately 100 employees, but denies the remaining allegations in that sentence.

6.  Dakota need not respond to the allegations in Paragraph 6 because they are addressed to another party

7.  Dakota admits the allegations in Paragraph 7.

8.  Dakota answers the allegations of Paragraph 8 by stating that the terms of the Employment Agreements speak for themselves

9.  Dakota answers the allegations of Paragraph 9 by stating that the terms of the Employment Agreements speak for themselves

10. Dakota answers the allegations in Paragraph 10 by stating that the terms of the Employment Agreements and the Merger Agreement speak for themselves

11. Dakota admits that on April 5, 2004, Sandeep, Pradeep, two other Dakota shareholders and various other companies executed a Merger Agreement, the terms of which speak for themselves

12. Dakota answers the allegations in Paragraph 12 by stating that the terms of the Merger Agreement and Employment Agreements speak for themselves

13. Dakota denies the allegations in Paragraph 13.

RLF1-2884509-1

14	Dakota answers the allegations in Paragraph 14 by stating that the terms of the Merger Agreement speak for themselves.

15	Dakota need not respond to the allegations in Paragraph 15 because they are directed at another party.

16.	Dakota need not respond to the allegations in Paragraph 16 because they are directed at another party

17	Dakota need not respond to the allegations in Paragraph 17 because they are directed at another party.

18	Dakota admits that the Goels had a significant role in developing Dakota's products, marketing them and dealing with customers. Dakota denies that Sandeep and Pradeep worked diligently on Dakota business after the April 5, 2004 merger. Dakota need not respond to the remaining allegations in Paragraph 18 because they are addressed to another party.

19	Dakota admits that Noridian first became a customer of Dakota around 1993, that Noridian and Dakota have executed several contracts, and that Noridian and Dakota currently have a contractual relationship. Dakota otherwise denies the allegations in Paragraph 19.

20.	Dakota need not answer the allegations in Paragraph 20 because they are directed at another party.

21	Dakota need not answer the allegations in the first sentence or the opening clause of the second sentence of Paragraph 21 because they are directed at another party. Dakota is without sufficient information to admit or deny the allegations as to the dates on which contracts

with Noridian were executed or the software delivered to Noridian. Dakota admits that several Noridian contracts appear to have been signed prior to March 31, 2005, but otherwise is without information sufficient to admit or deny the allegations in the last sentence of Paragraph 21.

22.   To the extent that the allegations in the first four sentences of Paragraph 22 are directed at WebMD in particular, Dakota need not respond to them. Dakota admits that in early 2005, John McCrae became Vice President of Operations at Dakota. Dakota denies that Mr. McCrae "knew virtually nothing about Dakota's business." Dakota admits that Mr. McCrae reported to Pradeep but that he also reported to Envoy. Dakota denies that Mr. McCrae disrupted or demoralized the Dakota workforce and states that to the contrary, morale improved under Mr. McCrae.

23.   To the extent that the allegations in Paragraph 23 are directed at WebMD, Dakota need not respond to them. To the extent that the allegations are directed at Dakota, Dakota admits that after the acquisition of Dakota by Envoy, Sandeep initially reported to Tony Holcombe. In early 2005, Jenny Morgan became an Executive Vice President of WebMD Business Services, and Sandeep subsequently reported to her; Dakota also admits that in early 2005, Ms. Morgan became Chairman of the Board of Dakota; and Dakota admits that the Goels objected to some of these management changes. Further answering, Dakota states that the Goels sought to undermine the effective management of Dakota by criticizing management changes to Dakota employees.

24.   Dakota need not respond to the allegations in Paragraph 24 because they are directed at another party. To the extent that factual allegations involve Dakota, Dakota denies the allegations.

25.     Dakota need not respond to the allegations in Paragraph 25 because they are directed at another party. To the extent that factual allegations involve Dakota, Dakota denies the allegations.

26.     Dakota admits that on April 6, 2005, the Board of Directors of Dakota terminated Edward Odjaghian as Vice President for Product Development and Customer Service. In regard to the second sentence of Paragraph 26, Dakota admits that Mr. Odjaghian worked with the Goels at Dakota for a number of years, but denies that Dakota was acquired by WebMD.

27.     In response to the allegations in Paragraph 27, Dakota admits that, in connection with a meeting of the Board of Directors, on April 6, 2005, Dakota terminated the employment of both Sandeep and Pradeep and gave them the termination letters attached as Exhibits C and D, respectively, to the Complaint.

28.     Dakota denies the allegations in Paragraph 28.

29.     Dakota denies the allegations in Paragraph 29.

30.     Dakota denies the allegations in Paragraph 30.

31.     Dakota denies the allegations in Paragraph 31.

32.     Dakota restates and incorporates by reference its answers to the allegations in Paragraphs 1-31.

33.     In response to the allegations in Paragraph 33, Dakota states that the terms of the Employment Agreements speak for themselves.

34.   In response to the allegations in Paragraph 34, Dakota states that the terms of the Employment Agreements speak for themselves

35.   In response to the allegations in Paragraph 35, Dakota states that the terms of the Employment Agreements speak for themselves

36.   Dakota denies the allegations in Paragraph 36. Further answering, Dakota states that the actions outlined in the Termination Letters to Sandeep and Pradeep and the Complaint constituted "cause" as defined in Section 4.1 of the Employment Agreements

37.   Dakota denies the allegations in Paragraph 37.

38.   Dakota denies the allegations in Paragraph 38

39.   Dakota denies the allegations in Paragraph 39.

40.   Dakota restates and incorporates by reference the allegations in Paragraph 40

41.   Dakota admits the allegations in Paragraph 41

42.   Dakota need not respond to the allegations in Paragraph 42 because they consist of conclusions of law

43.   Dakota need not respond to the allegations in Paragraph 43 because they are directed at another party

44.   Dakota denies the allegations in Paragraph 44

45.   Dakota denies the allegations in Paragraph 45.

46. Dakota denies the allegations in Paragraph 46.

47. Dakota denies the allegations in Paragraph 47.

48. Dakota restates and incorporates by reference its answers to the allegations in Paragraph 1-47.

49. Dakota admits the allegations in Paragraph 49.

50. Dakota denies the allegations in Paragraph 50.

51. Dakota denies the allegations in Paragraph 51.

52. Dakota need not respond to the allegations in Paragraph 52 because they are directed at another party.

53. Dakota denies the allegations in Paragraph 53. Further answering, Dakota states that the Goels breached their Employment Agreements with Dakota by, among other things, ordering the destruction of the Company's financial information, copying on an unauthorized basis highly confidential computer source code and undermining the authority of the Dakota Board and Envoy's President as to Dakota.

54. Dakota denies the allegations in Paragraph 54. Further answering, Dakota states that, to the extent that the Goels failed to achieve sufficient revenue during the applicable period to be awarded an Earnout payment, such failure was due to, among other things, the Goels disregard of their duties and obligations under the Employment Agreements, including but not limited to their failure to spend more than a several days a month at Dakota's offices after the closing of the Merger Agreement and their failure to properly manage the staff.

55.     Dakota denies the allegations in Paragraph 55. Further answering, Dakota states that it is the party in this action which has been injured by the Goel's complete disregard for their duties and obligations under their respective Employment Agreements, resulting in Dakota suffering injured relations with its current and prospective customers and a related loss of revenue and good will.

## AFFIRMATIVE DEFENSES

### First Defense

The Counterclaim fails to state a claim for which relief may be granted against Dakota.

### Second Defense

The Counterclaim, insofar as it seeks to enforce alleged rights to "earnout" payments, is inapplicable as to Dakota because Dakota has no obligations under either the Employment Agreements or the Merger Agreement to make "earnout" payments to the Goels.

### Third Defense

Even if the Earnout obligations in the Merger Agreement extended to Dakota, which they do not, this Court lacks subject matter jurisdiction over Earnout-related claims because Section 1.7 of the Merger Agreement requires arbitration of any Earnout-related disputes not resolved by the independent accountant referenced in Section 1.7.

### Fourth Defense

The Goels are not entitled to recover against Dakota because they breached their Employment Agreements with Dakota.

### Fifth Defense

The Goels are not entitled to recover against Dakota because Dakota properly terminated their Employment Agreements with cause.

### Sixth Defense

The Goels have waived any claims against Dakota by their conduct.

### Seventh Defense

The Goels are estopped by their conduct from recovery against Dakota.

### Eighth Defense

The Goels may not obtain relief against Dakota because of their unclean hands.

### Other Defenses

Dakota reserves the right to raise other affirmative defenses as they become known.

RLF1-2884509-1

WHEREFORE Dakota requests that the Court:

1. Dismiss the Counterclaims;

2. Enter judgment on the Counterclaims as to Dakota;

3. Award Dakota costs and reasonable attorneys' fees; and

4. Grant such other relief as the Court deems just and proper.

/s/ Michael R. Robinson
Jesse A. Finkelstein (DSBA 1090)
Michael R. Robinson (DSBA 4452)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 N. King Street
Wilmington, Delaware 19801
(302) 651-7700
finkelstein@rlf.com
robinson@rlf.com

*Attorneys for Plaintiff/Counterclaim-Defendant Dakota Imaging, Inc.*

Of Counsel:

Harry T. Daniels
Richard A. Johnston
Mark A. Delaney
Cytheria D. Jernigan
WILMER CUTLER PICKERING
HALE AND DORR LLC
60 State Street
Boston, MA 02109
(617) 526-6000

Dated: June 7, 2005

-11-

## CERTIFICATE OF SERVICE

I hereby certify that on June 7, 2005, I electronically filed the foregoing document with the Clerk of Court using CM/ECF which will send notification of such filing(s) and Hand Delivered copies of the foregoing document to the following:

>Michael P. Stafford, Esquire
>YOUNG CONAWAY STARGATT & TAYLOR, LLP
>The Brandywine Building
>1000 West Street, 17th Floor
>P.O. Box 391
>Wilmington, DE 19879-0391

I further hereby certify that on June 7, 2005, I have mailed by Federal Express, the document(s) to the following non-registered participants:

>Ward B. Coe III, Esquire
>Kevin C. McCormick, Esquire
>WHITEFORD, TAYLOR & PRESTON
>Seven Saint Paul Street, Suite 1400
>Baltimore, MD 21202

>_____
>Michael R. Robinson (#4452)
>Richards, Layton & Finger, P.A.
>One Rodney Square
>920 N. King Street
>Wilmington, DE 19801
>(302) 651-7700
>robinson@rlf.com

RLF1-2884580-1