# EXHIBIT A

## TO

# PLAINTIFFS' AND COUNTERCLAIM-DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO REMAND

Slip Copy
2005 WL 1109637 (E.D.Pa.)
(Cite as: 2005 WL 1109637 (E.D.Pa.))

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available

United States District Court,
E.D. Pennsylvania
Leroy MCKNIGHT, *pro se,* Plaintiff,
v.
HARTFORD INSURANCE COMPANY, et al.,
Defendants.
**No. CIV.A. 05-492.**

May 11, 2005.

*MEMORANDUM*

ROBERT F. KELLY, Senior District Judge.

**\*1** Presently pending before this Court are several motions to dismiss the complaint, as well as numerous responses and motions filed by Plaintiff to which the Court has difficulty assigning labels. As several of the motions raise the issue of jurisdiction, I have elected to review the Complaint in its totality to determine the existence of subject matter jurisdiction. After a careful review of the Amended Complaint, I conclude that I lack subject matter jurisdiction to consider this case and will, accordingly, dismiss it.

**I. *BACKGROUND***

Plaintiff initiated the present action in this Court by filing a Complaint against Hartford Insurance Company. Plaintiff thereafter filed an Amended Complaint naming Mara Leyzin, M.D., Anna Dubyanskite, M.D., and Nazareth Hospital as Defendants. Thereafter, Plaintiff filed two motions to amend his complaint, on February 18 and 23, 2005. In an Order of March 3, 2005, this Court granted Plaintiff's requests to amend his complaint and directed him to file a single amended complaint naming all defendants he wished to sue and the grounds therefore with respect to each defendant. The required Amended Complaint was filed on March 11, 2005, naming the current sixteen Defendants.

**II. *DISCUSSION***

"It is a principle of first importance that the federal courts are courts of limited jurisdiction." 13 Wright, Miller, & Cooper, *Federal Practice and Procedure §* 3522. While most state courts are courts of general jurisdiction, where the presumption is that they have jurisdiction over a cause unless a showing is made to the contrary, the federal courts, on the other hand, are courts of limited jurisdiction. They are empowered only to hear only those cases that are within the judicial power of the federal government defined by the Constitution, and that have been entrusted to them through a jurisdictional grant by the Congress. *Id.* As a result, jurisdiction must be proven to the court or it is powerless to proceed. *Id.* Furthermore, when it becomes apparent that the court lacks subject matter jurisdiction, the case must be dismissed. *Id.; see also Am. Fiber v. Tyco Healthcare,* 362 F.3d 136, 138 (1st Cir.2004).

There are two independent grounds for jurisdiction in the federal courts. First, an action may be brought pursuant to a question of federal law. Second, the federal courts have the power to hear cases based upon a question of state law when the parties to the action are of diverse citizenship. I will consider each ground of jurisdiction.

**A. FEDERAL QUESTION JURISDICTION**

The district courts have original jurisdiction over a civil action arising under the Constitution, law, or treaties of the United States. 28 U.S.C. § 1331. As a result, an action may be brought in the federal courts so long as federal law creates the cause of action, or the complaint poses a substantial question of federal law. *See Virgin Islands Hous. Auth. v. Coastal Gen. Constr. Servs. Corp.,* 27 F.3d 911, 916 (3d Cir.1994).

Although Plaintiff has categorized this action as a "civil rights claim" on the Civil Cover Sheet, it is clear that the Amended Complaint does not allege any state action that violated his rights. It does not, therefore, provide a basis for this Court to take jurisdiction. In order to make out a claim for a civil rights violation pursuant to the relevant law, a plaintiff must allege, with a modicum of actual specificity, that a state actor violated a federally

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                    Page 20
2005 WL 1109637 (E.D.Pa.)
**(Cite as: 2005 WL 1109637 (E.D.Pa.))**

protected right. *DeFerro v. Coco,* 709 F.Supp. 643 (E.D.Pa.1989).

**\*2** The only claim asserted against a state actor in the Amended Complaint is Plaintiff's assertion that the City of Philadelphia's Department of Licensing and Inspection failed to provide him a report of an inspection undertaken at his apartment to evaluate the presence of mold. There is no claim that this conduct violates any constitutional or federal statutory right. There is, therefore, no basis for jurisdiction as a question of federal law. All of Plaintiff's other claims against the remaining Defendants are either claims for medical malpractice or otherwise claims of negligence, claims that are grounded in state law. As a result, the Amended Complaint does not invoke federal question jurisdiction.

**B. DIVERSITY JURISDICTION**

District courts also have original jurisdiction over matters in which there is complete diversity of citizenship among the parties and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332. Diversity of citizenship requires that no plaintiff may be a citizen of the same state as a defendant. Individuals are citizens of the state in which they reside and maintain their domicile. Corporations are citizens of the states in which they are incorporated and maintain their principal place of business.

Plaintiff, who resides in the City of Philadelphia, is a citizen of the Commonwealth of Pennsylvania. A review of the summonses issued in this case shows that at least fifteen of the sixteen Defendants in this action are citizens of the Commonwealth of Pennsylvania. As a result, there is not even the slightest possibility of jurisdiction in this court based upon diversity among the parties. As a result, the case will be dismissed.

**III. CONCLUSION**

After a careful review of the Amended Complaint, I conclude that neither federal question nor diversity jurisdiction are present in this case. As a result, I am required to dismiss it for lack of subject matter jurisdiction.

An appropriate Order follows.

**ORDER**

**AND NOW,** this --- day of May, 2005, after careful consideration of the Amended Complaint, it is hereby **ORDERED** that the Amended Complaint is **DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION.**

All outstanding Motions are hereby **DISMISSED AS MOOT.**

2005 WL 1109637 (E.D.Pa.)

**Motions, Pleadings and Filings (Back to top)**

 2:05CV00492 (Docket) (Feb. 03, 2005)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
2005 WL 400198 (D Del.)
**(Cite as: 2005 WL 400198 (D.Del.))**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available

United States District Court,
D. Delaware
SHAMROCK HOLDINGS OF CALIFORNIA, INC.,
Shamrock Capital Advisors, Inc., Eugene
I. Krieger, George J. Buchler and Bruce J. Stein,
Plaintiffs,
v
Avie ARENSON, Selk, LLC and Laurel Equity
Group, LLC, Defendants.
**No. Civ. 04-1339-SLR.**

Jan 27, 2005

S. Mark Hurd, Morris, Nichols, Arsht & Tunnell,
Wilmington, DE, for Plaintiffs.

Sean J. Bellew, Cozen & O'Connor, Wilmington,
DE, for Defendants.

MEMORANDUM ORDER

ROBINSON, J.

I. INTRODUCTION

*1 On September 13, 2004, plaintiffs Shamrock
Holdings of California, Inc. ("Shamrock"),
Shamrock Capital Advisors, Inc. ("SCA"), Eugene I.
Krieger, ("Krieger"), George J. Buchler ("Buchler")
and Bruce J. Stein ("Stein") commenced this action
against defendants, Avie Arenson ("Arenson"),
SELK, LLC ("SELK") and Laurel Equity Group,
LLC ("Laurel"), in the Chancery Court of Delaware
seeking declaratory relief pursuant to 10 Del. C. § §
6501 et seq. (2004). (D.I. 16 at 2) On October 6,
2004, defendants removed this action from the
Chancery Court to this court. (D.I 1) After removing
this case, defendants filed separate motions to
dismiss. (D.I.3, 4) On October 22, 2004, the parties
stipulated that the motions to dismiss would be
stayed until the resolution of plaintiffs' motion to
remand, filed on November 5, 2004. (D.I.6, 15)
Pending before the court is plaintiffs' motion to
remand.

II. BACKGROUND

Defendants were investors in ALH Holdings, Inc.
[FN1] ("ALH"), a limited liability company
organized in 1998 under the laws of Delaware to
engage in home-building. (D.I. 20, Ex. A at 1)
Ultimately, ALH was an unsuccessful venture, and
investors lost their investments. (Id.) In response to
their losses, defendants threatened to sue plaintiffs
for breach of fiduciary duty, self-interest and
wrongful conduct. (Id at 3) Defendants asserted that
plaintiffs owed them "millions of dollars" in order to
make them whole again. (Id.)

> FN1. As owner of Arenson Holdings and
> D.A. Gardens, defendant Arenson invested
> $1.4 million. Both Arenson Holdings and
> D.A. Gardens are class B stock holders.
> (D.I 20, Ex. A at 4) SELK, LLC, invested
> approximately $2.9 million and was a Class
> B member. Id Laurel invested $2.9 million
> and was also a class B member. Plaintiff
> Shamrock invested $9.1 million in ALH.
> Shamrock holds about 62% of the Class A
> membership interest and about 38% of
> ALH. (D.I. 20, Ex. A at 3)

A. Citizenship of Parties

Plaintiffs Krieger, Buchler and Stein are all citizens
of California. (D.I. 20 at ¶ 14) All three were
employees of Shamrock, served on ALH's
supervisory board and performed "substantial
services for SCA." (Id.)

Buchler and Krieger were the supervisory board
representatives for the Class A members of ALH.
(Id.) The class A members were citizens of Arizona,
California, Colorado and Nevada. (Id at ¶ 15)

Stein represented the class D members on the
supervisory board. The only class D member was a
Delaware limited liability company, Lion ALH
Capital LLC. The members of this limited liability
company were citizens of Delaware and New York.

Plaintiff Shamrock is a corporation organized under
the laws of California with its principal place of
business in California. (D.I. 20 at ¶ 13) Plaintiff
SCA is a Delaware corporation with its principal

Slip Copy
2005 WL 400198 (D.Del.)
(Cite as: 2005 WL 400198 (D.Del.))

place of business in California. (*Id.*)

Defendant Arenson is a citizen of Israel and was the Class B representative on ALH's supervisory board (D.I. 18 at 13) The class B members were A. Arenson Holdings, Ltd., D.A. Gardens, Ltd., J12ALH, Associates LLC and defendants SELK and Laurel. (D.I. 20, Ex. B at Ex. B) A. Arenson Holdings, Ltd. is a Israeli corporation with its principal place of business in Israel. (D.I. 24 at 10) D.A. Gardens, Ltd., is a Panamanian corporation with its principal place of business in Panama. (*Id.*) J12ALH is a Delaware LLC whose members are Erica Jesselson, a citizen of New York, and Jays Twelve, LLC. (*Id.*) The members of Jays Twelve, LLC are all New York citizens. (*Id.*)

*2 Defendant SELK is a limited liability company formed under the laws of Delaware. (D.I. 20, Ex. A at 5) Its members are Shalom Lamm, a resident of New York, and NACA Holding, Inc. ("NACA"), a British Virgin Islands corporation with, defendants allege, a principal place of business in Tortola, British Virgin Islands. (D.I. 24 at 11) NACA, however, cannot conduct business with residents of the British Virgin Islands or have any interest in real property in the British Virgin Islands other than a lease for business purposes. (D.I. 28 at Ex. B)

Defendant Laurel is a Delaware limited liability company; its members are Mark Frankel, Chesky Frankel and Sallervale Company. (*Id.*) Mark Frankel is a citizen of New Jersey, Chesky Frankel is a citizen of New York and Sallervale Company is a Bahamian corporation with, defendants allege, a principal place of business in Nassau, Bahamas (*Id.*) The Sallervale Company, however, cannot conduct business with a Bahamian resident, nor own an interest in property greater than a lease for business purposes. (D.I. 28 at Ex. A)

B. Content of the Removal Notice

Paragraphs 2-4 of the removal notice identify the dates at which the defendants were served with plaintiffs' complaint. The notice states that the "matter in controversy exceeds the sum of $75,000, exclusive of interest and costs because [p]laintiffs allege in paragraph 6 of this [d]eclaratory [a]ction that [d]efendants 'have demanded millions of dollars." ' (D.I. 20, Ex C at 2) The notice details what it believes to be the citizenship of the plaintiffs.

(*Id.*) It states the citizenship of the members of each of defendant limited liability companies, but not who the members are. [FN2] For example, the notice states "[SELK] was, and still is a limited liability corporation with its members being citizens of New York and the British Virgin Islands." (*Id*) Finally, the notice states that it was made within 30 days after the first defendant received process. (*Id.* at 3)

> FN2. In the notice, defendants stated the Laurel members were citizens of New Jersey, New York and Belgium, but in their answer to plaintiffs' motion for remand, the defendants state that the members are citizens of New Jersey, New York and the Bahamas. (D.I. 20, Ex. C at 3; D.I. 28, Ex B)

III. STANDARD OF REVIEW

The exercise of removal jurisdiction is governed by 28 U.S.C. § 1441(a) (2004). The statute is strictly construed, requiring remand to state court if any doubt exists over whether removal was proper. *Shamrock Oil & Gas Corp. v. Sheets,* 313 U.S. 100, 104, 61 S.Ct. 868, 85 L.Ed. 1214 (1941). A court will remand a removed case "if at any time before final judgment it appears that the district court lacks subject matter jurisdiction." 28 U.S.C. § 1447(c) (2004). The party seeking removal bears the burden to establish federal jurisdiction. *Steel Valley Auth. v. Union Switch & Signal Div. Am. Standard, Inc.,* 809 F.2d 1006 (3d Cir.1987); *Zoren v. Genesis Engery, L.P.,* 195 F.Supp.2d 598, 602 (D.Del.2002). In determining whether remand based on improper removal is appropriate, the court "must focus on the plaintiff's complaint at the time the petition for removal was filed," and assume all factual allegations therein as true. *Id.*

IV. DISCUSSION

*3 Plaintiffs argue that this case was inappropriately removed from the Court of Chancery because there is no diversity of citizenship and because the Notice of Removal was inadequate. [FN3] (D.I. 16)

> FN3. Plaintiffs argue that defendants SELK and Laurel should not be allowed to remove this case because they are Delaware citizens. If defendants are citizens of the state in which the action was brought, then

Slip Copy                                                                                                         Page 4
2005 WL 400198 (D.Del.)
(Cite as: 2005 WL 400198 (D.Del.))

the action cannot be removed to federal court. *See* 14B Charles Alan Wright et al., Federal Practice and Procedure § 3721 (3d ed.1998). As stated in Part IV.A.1, however, SELK and Laurel are not Delaware citizens.

### A. Diversity of Citizenship

Plaintiffs argue that there is no diversity of citizenship because plaintiff SCA is a Delaware corporation, defendants SELK and Laurel are Delaware limited liability companies and defendant Arenson can be considered a Delaware citizen, as he represented Delaware residents on the ALH supervisory board. Plaintiffs also assert that plaintiff Stein is a New York resident because he represented New York residents on the ALH supervisory board, and defendants SELK and Laurel are New York residents because they have members who are New York residents. Defendants argue that the citizenship of a limited liability company is determined by the citizenship of its members, not by the states in which the limited liability companies are formed; therefore, SELK and Laurel are not Delaware citizens. Defendants also assert that plaintiff Stein and defendant Arenson cannot be considered residents of Delaware and New York simply because they represented citizens of those states on the ALH board. Therefore, according to defendants, diversity of citizenship does exist.

### 1. Citizenship of Stein

Plaintiffs argue that the alleged wrongful actions taken by plaintiff Stein were taken in his representative capacity; thus, he should be considered a representative for jurisdictional purposes. Defendants argue that under the ALH Operating Agreement, plaintiff Stein can be independently liable for his actions and the complaint does not indicate he is suing defendants in a representative capacity; therefore, for jurisdictional purposes, only his individual citizenship should be considered.

It is axiomatic that a person who is a party to litigation is a citizen of the state of his/her domicile. Nevertheless, "a person who sues or is sued in a representative capacity is distinct from that person in his individual capacity" and can be a citizen of the states in which the individuals he/she represents are

citizens. *Alexander v. Todman,* 361 F.2d 744, 746 (3d Cir.1966).

Delaware law prohibits individual liability of members or managers of limited liability companies, to other members or managers, unless such liability is provided for in the operating agreement. *See* 6 Del. C. § 18-1101(d) (2004). Section 6.2(f) discusses the liability of representative board members and states:

> Neither the Manager nor any Representative or Deputy Representative shall be liable, responsible, or accountable in damages or otherwise to the Company or any of the Members for any failure to take any action or the taking of any action within the scope of authority conferred on it, him or her by this Agreement made in good faith, except that the Manager, Representative and Deputy Representatives shall be liable, responsible and accountable for their own fraud, criminal action, bad faith or gross negligence. Nothing in this Section 6.2(f) shall be deemed to make the Manager or any Representative or Deputy Representative liable, responsible or accountable to any Person other than the Company or the Members.

**\*4** (D.I. 20, Ex. B at 27)

In this case, the Operating Agreement explicitly states that representatives can only be liable for their own actions. Therefore, defendants could only sue Stein in his individual capacity, and Stein would only have standing to bring a declaratory judgment action in his individual capacity. Under this analysis, Stein is a citizen of California for jurisdictional purposes.

### 2. Citizenship of SELK and Laurel

The citizenship of artificial entities, such as limited liability companies, has been considered by the Supreme Court and numerous appellate courts. In *Cardon v. Arkoma Assoc.,* 494 U.S. 185, 197, 110 S.Ct. 1015, 108 L.Ed.2d 157 (1990), the Supreme Court declined to extend to partnerships its precedent and 28 U.S.C. § 1332(c), which provide that a corporation is a citizen of the state in which it was incorporated and the state where it has its principal place of business. The Court concluded that changing federal diversity jurisdiction was a Congressional responsibility and, unless Congress acted to include partnerships in the purview of §

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

1332(c), the citizenship of partnerships would depend on the citizenship of the partners.

This rationale applies equally to limited liability companies. In *Cosgrove v. Bartolotta*, 150 F.3d 729 (7th Cir.1998), the Seventh Circuit concluded that, "[g]iven the resemblance between an LLC and a limited partnership, and what seems to have crystallized as a principle that members of associations are citizens for diversity purposes unless Congress provides otherwise ... the citizenship of an LLC for purposes of diversity jurisdiction is the citizenship of its members." *Id.* at 731 (citing *Carden*, 150 F.3d 185 and *United Steelworkers of Am. v. R.H. Bouligny, Inc.*, 382 U.S. 145, 152-53, 86 S.Ct. 272, 15 L.Ed.2d 217 (1965)). *See also Rolling Green MHP, L.P. v. Comcast SCH Holdings, LLC*, 374 F.3d 1020, 1022 (11th Cir.2004) (finding that a LLC is a citizen of any state of which a member of the company is a citizen); *Belleville Catering Co. v. Champaign Mkt. Place, LLC*, 350 F.3d 691, 692 (7th Cir.2003) (holding that LLCs are not like corporations for jurisdictional purposes, and the citizenship of a LLC depends on the citizenship of its members); *Ketterson v. Wolf*, No. Civ.A. 99-689-JJF, 2001 WL 940909, at *3 (D.Del. Aug.14, 2001) (concluding that a LLC is a citizen of the states in which its individual members are citizens). Therefore, without Congressional action redefining the citizenship of a limited liability company, this court declines to conclude that the citizenship of a limited liability company is determined by anything other than the citizenship of its members.

The citizenship of SELK and Laurel depends, therefore, on the citizenship of their respective corporate members. Their corporate members, Sallervale and NACA Holdings, are considered citizens of where they were incorporated and where their principal places of businesses are. *See* 28 U.S.C. § 1332(c)(1) (2004). The Third Circuit has stated that a principal place of business is determined by business activities, for example, "where the corporation 'conducts its affairs' " and not necessarily just " 'where ... final decisions are made on corporate policy.' " *Grand Union Supermkts., of the Virgin Is., Inc. v. H.E. Lockhart Mgmt., Inc.*, 316 F.3d 408, 411 (3d Cir.2003) (quoting *Kelly v. U.S. Steel Corp..*, 284 F.2d 850, 854 (3d Cir.1960)).

*5 The evidence of record with respect to Sallervale and NACA Holdings is negligible. On the one hand,

the record indicates that, although they are incorporated in the Bahamas and the British Virgin Islands, respectively, neither is permitted to conduct business with local residents or own an interest in local real estate. Defendants aver in a conclusory fashion that the principal places of business for Sallervale and NACA Holdings are the same as their places of incorporation. Defendants, however, fail to provide any detail as to the corporations' business activities, for example, what business affairs are conducted and where, and where final decisions are made on corporate policy. It could be that these corporations conduct no business, but without any information in this regard, the court declines to accept defendants' averments carte blanche and find federal jurisdiction on this basis. Therefore, if defendants choose to, they may supplement the record as to these corporate entities. Otherwise, the court does not have a good faith basis upon which to find diversity of citizenship.

B. Adequacy of Defendants' Notice of Removal

Federal diversity jurisdiction requires that the amount in controversy be at least $75,000. *See* 28 U.S.C. § 1332(a) (2004). The Third Circuit uses the "plaintiff's-view rule" to determine the amount in controversy; thus, the amount in controversy is usually the amount sought by the plaintiff. *In re LifeUSA Holding, Inc.*, 242 F.3d 136, 143 (3d Cir.2001); *In re Corestates Trust Fee Litig.*, 39 F.3d 61, 64 (3d Cir.1994). Generally, this would mean that declaratory judgment actions could not be removed because plaintiffs in such actions do not ask for monetary sums. However, typically the amount in controversy can include the worth of the issue being litigated. *See Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 339-40, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977). Recently the Third Circuit considered the monetary amount of a threat to sue by defendants when determining the amount in controversy in a declaratory action. *See Liberty Mut. Fire Ins. Co. v. Yoder*, No. 03-3623, 2004 WL 2360987 (3d Cir. October 19, 2004). [FN4] In this case, defendants satisfied the notice requirement by quoting the complaint, which stated that defendants had threatened to sue plaintiffs for "millions of dollars." The court finds this allegation sufficient to pass muster under 28 U.S.C. § 1332(a).

FN4. Although this case is not published and, therefore, not precedential, it serves as

Slip Copy
2005 WL 400198 (D.Del.)
(Cite as: 2005 WL 400198 (D.Del.))

guidance regarding how the Third Circuit would apply the "plaintiff's-view rule" to a declaratory judgment action.

## V. CONCLUSION

Therefore, at Wilmington this 27th day of January, 2005, having reviewed plaintiffs' motion to remand and defendants' responses thereto;

IT IS ORDERED that, on or before February 22, 2005, defendants may supplement the record with respect to Sallervale Company and NACA Holdings, Incorporated. NOTE: FAILURE TO TIMELY SUPPLEMENT WILL RESULT IN PLAINTIFFS' MOTION FOR REMAND (D.I.15) BEING GRANTED.

**Motions, Pleadings and Filings (Back to top)**

· 1:04CV01339 _____ (Docket) (Oct. 06, 2004)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 8
2004 WL 2367828 (E.D.Pa.)
**(Cite as: 2004 WL 2367828 (E.D.Pa.))**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
E.D. Pennsylvania.
Philip THIBODEAU
v.
COMCAST CORPORATION, et al
**No. Civ.A. 04-1777.**

Oct. 21, 2004

Gerald J. Williams, Williams Cuker Berezofsky,
Philadelphia, PA, for Plaintiff.

Michael W. McTigue Jr., Drinker, Biddle & Reath,
LLP., Philadelphia, PA, for Defendants.

*MEMORANDUM*

PADOVA, J.

*1 Plaintiff Philip Thibodeau originally filed this
putative class action in the Philadelphia County
Court of Common Pleas against Defendants Comcast
Corporation; Comcast Cable Communications, Inc.;
Comcast Holdings Corporation; Comcast Cable
Communications Holdings, Inc.; Comcast Cable
Holdings, LLC; Comcast MO Group, Inc.; Comcast
MO of Delaware, Inc.; Comcast of Massachusetts II,
Inc.; and AT & T Corporation. Defendants removed
to this Court on April 23, 2004. The Notice of
Removal alleges that this Court has jurisdiction over
this action pursuant to 28 U.S.C. § 1441 because
this action is based on federal law. [FN1] Presently
before the Court is Plaintiff's Motion to Remand. For
the reasons that follow, the Motion is granted.

> FN1. There is no diversity jurisdiction in
> this case because Plaintiff and two
> Defendants are alleged to be Massachusetts
> residents. (Compl.¶¶ 13, 21-22.)

I. BACKGROUND

Plaintiff has brought this action on behalf of two
classes, the Converter Box Equipment Class and the

Remote Control Class. The Converter Box
Equipment Class is defined as:

> All present and former customers of defendants
> that have a cable-ready television set(s) or a video
> cassette recorder who subscribe to basic
> programming, expanded basic, standard
> programming or other comparable basic service
> provided by defendants and have paid defendants
> rental charges for cable converter box equipment,
> including a converter box and a remote control, at
> any time from at least May 31, 1994 to the
> present.

(Compl.¶ 68.) The Remote Control Class is
defined as "[a]ll present and former customers of
defendants that rented and paid for a remote control
at any time from May 31, 1994 to the present." (*Id.*¶
69.)

The Complaint alleges the following pertinent facts.
Prior to 1994, Defendants scrambled their Basic
Programming, which includes basic level cable,
expanded basic cable, and other non-premium
programming, and used proprietary remote control
technology. (*Id.*¶¶ 36-39.) As a result, subscribers
to Defendants' Basic Programming were required to
rent converter box equipment in order to view the
Basic Programming channels. (*Id.*) Moreover,
Defendants' cable subscribers were required to rent
remote controls from Defendants in order to view all
levels of service. (*Id.*) In 1994, the Federal
Communications Commission ("FCC") adopted
various rules and regulations that prohibited cable
system operators from scrambling basic cable service
and required cable system operators to: permit
consumers to view all non-scrambled stations
without the need to rent a converter box; establish
equipment compatibility requirements for cable-
ready televisions ("TVs") and video cassette
recorders ("VCRs") that prohibited the manufacture
or importation of non-compatible cable-ready
equipment; promote the commercial availability of
third party equipment, including remote controls;
and adequately inform subscribers that they no
longer needed to rent converter box equipment or
remote controls from cable system operators. (*Id.*¶¶
3, 43.) Defendants were aware of these rules and
regulations because they had filed comments in
response to the FCC's First Report and Order
addressing the rules and regulations (*Id.*¶ 40,
42.) The FCC rules and regulations changed the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                Page 9
2004 WL 2367828 (E.D.Pa.)
(Cite as: 2004 WL 2367828 (E.D.Pa.))

cable industry from one that required the use and
rental of converter box equipment and remote
controls from Defendants to one that did not require
the use or rental of converter box equipment and
remote controls for the vast majority of cable
subscribers (*Id.* ¶ 46.)

*2 Defendants thereafter ceased scrambling their
Basic Programming signal. (*Id.* ¶ ¶ 48-49.) Thus,
Defendants knew that their Basic Programming
subscribers who owned a cable-ready TV or VCR
could view Basic Programming channels without the
need to rent converter box equipment. (*Id.* ¶ ¶ 6,
50.) Defendants also knew that none of its cable
subscribers who owned cable-ready TVs or VCRs
needed to continue renting remote controls from
Defendants because universal remote controls often
came with such TVs or VCRs and/or were
commercially available from retail outlets. (*Id.* ¶
55.) Independent of any federal rules and
regulations, Defendants had an obligation to notify
their Basic Programming subscribers that they did
not need to rent converter box equipment from
Defendants in order to view the Basic Programming
stations, and to cease billing Basic Programming
subscribers for such equipment. (*Id.* ¶ 65.)
Independent of any Federal rules and regulations,
Defendants also had an obligation to notify all of
their cable subscribers that they did not need to rent
a remote control from Defendants, and to cease
billing their cable subscribers for such equipment.
(*Id.* ¶ 65.) From at least October 31, 1994 and
continuing to date, Defendants knowingly or
recklessly engaged in fraudulent conduct by:
  1. Improperly charging their Basic Programming
  customers who rent or rented cable converter box
  equipment that was not required to view Basic
  Programming;
  2. Improperly charging their customers for the
  rental of a remote control because remote controls
  were commercially available and Defendants were
  required to make their equipment compatible with
  their customers' equipment;
  3. Misrepresenting through their billing
  statements and/or suppressing material facts
  designed to confuse or mislead Plaintiff and the
  putative class members into believing that such
  rental charges were in fact proper, thereby
  overcharging Plaintiff and the class members;
  4. Failing to adequately advise Plaintiff and the
  putative class members that there were alternatives
  to renting converter box equipment from

Defendants, including purchasing compatible
cable converter box equipment and remote
controls from a retail outlet; and
  5. Failing to adequately advise Plaintiff and the
  putative class members that they no longer needed
  to rent cable converter box equipment.
(*Id.* ¶ 67.)

Based on these allegations, Plaintiff asserts the
following state law claims against Defendants:
violations of the Pennsylvania Unfair Trade Practices
and Consumer Protection Law ("UTPCPL") (Count
I); breach of contract (Count II); fraud (Count III);
negligent misrepresentation (Count IV); and unjust
enrichment (Count V). Plaintiff also seeks an
accounting of all funds paid by Plaintiff and the
putative class members to Defendants and an
accounting of all funds drawn from Defendants'
accounts (Count VI), as well the imposition of a
constructive trust (Count VII).

## II. LEGAL STANDARD

*3 Plaintiff has moved to remand this action to the
Philadelphia County Court of Common Pleas. A
defendant may remove a civil action filed in state
court if the federal district court would have original
jurisdiction to hear the matter. 28 U.S.C. § 1441(b);
*Boyer v. Snap-on Tools Corp.*, 913 F.2d 108, 111
(3d Cir.1990). Once a case has been removed from
state court, however, the federal district court must
remand the case "[i]f at any time before final
judgment it appears that the district court lacks
subject matter jurisdiction." 28 U.S.C. § 1447(c).
The removing party bears the burden of establishing
removal jurisdiction. *Boyer*, 913 F.2d at 111. In
ruling on a motion for remand, "the district court
must focus on the plaintiff's complaint at the time
the petition for removal was filed ... [and] must
assume as true all factual allegations of the
complaint." *Steel Valley Auth. v. Union Switch and
Signal Div.*, 809 F.2d 1006, 1010 (3d Cir.1987).
"Because lack of jurisdiction would make any decree
in the case void and the continuation of the litigation
in federal court futile, the removal statute should be
strictly construed and all doubts resolved in favor of
remand." *Brown v. Francis*, 75 F.3d 860, 865 (3d
Cir.1996) (quoting *Abels v. State Farm Fire & Cas.
Co.*, 770 F.2d 26, 29 (3d Cir.1985)); *see also Univ.
of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 411
(11th Cir.1999) ("A presumption in favor of remand
is necessary because if a federal court reaches the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

merits of a pending motion in a removed case where subject matter jurisdiction may be lacking it deprives a state court of its right under the Constitution to resolve controversies in its own courts.").

III. DISCUSSION

Defendants argue that removal was proper because the Court has original federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331. The presence or absence of federal question jurisdiction is governed by the "well-pleaded complaint rule," which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint. *Caterpillar Inc. v. Williams,* 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987); *see also Bracken v. Matgouranis,* 296 F.3d 160, 163 (3d Cir.2002) (noting that well-pleaded complaint rule permits removal "only when the *plaintiff's* statement of his own cause of action shows that it is based upon [federal] laws or th[e] Constitution") (quoting *Louisville & Nashville R. Co. v. Mottley,* 211 U.S. 149, 152, 29 S.Ct. 42, 53 L.Ed. 126 (1908)) (emphasis added). The well-pleaded complaint rule "makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." *Caterpillar,* 482 U.S. at 392. Under the well-pleaded complaint rule, a case ordinarily may not be removed to federal court on the basis of a federal defense, including the defense of preemption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue. *Id.* at 393 (citing *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for Southern Cal.,* 463 U.S. 1, 12, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983)).

*4 On its face, Plaintiff's Complaint in this case sounds entirely in state law. However, a well-established corollary to the well-pleaded complaint rule is the "artful pleading doctrine," under which "a court will not allow a plaintiff to deny a defendant a federal forum when the plaintiff's complaint contains a federal claim 'artfully pled' as a state law claim." *Goepel v. Nat'l Postal Mail Handlers Union,* 36 F.3d 306, 311 n. 5 (3d Cir.1994) (citation omitted). Removal is permitted under the artful pleading doctrine if "(1) federal law has completely preempted the state law that serves as the basis for the plaintiff's complaint, or (2) a federal question, not pleaded in

the plaintiff's complaint, is nonetheless both intrinsic and central to the plaintiff's cause of action." *Guckin v. Nagle,* 259 F.Supp.2d 406, 410 (E.D.Pa.2003) (citing 14B Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure* § 3722 (3d ed.1999)). Courts should invoke the artful pleading doctrine "only in limited circumstances[,] as it raises difficult issues of state and federal relationships and often yields unsatisfactory results." *Lippitt v. Raymond James Fin. Services, Inc.,* 340 F.3d 1033, 1041 (9th Cir.2003) (citation omitted). [FN2]

> FN2. Defendants assert that the artful pleading doctrine provides an independent basis for removal. Courts have, however, generally concluded that "artful pleading is not a separate removal doctrine, but rather refers to the manner in which some plaintiffs manage to plead claims that are actually federal (because they are either completely preempted, or based entirely on substantial federal questions) under state law." *In re Wireless Tel. Radio Frequency Emissions Prod. Liab. Litig.,* 327 F.Supp.2d 554, 563 (D.Md.2004); *accord Guckin,* 259 F.Supp.2d at 410. *See also* Arthur R. Miller, *Artful Pleading: A Doctrine in Search of a Definition,* 76 Tex. L.Rev. 1781, 1784 (1998) (noting that courts have addressed the complete preemption and substantial federal question doctrines "under the single heading of artful pleading").

A. *Complete Preemption*

Defendants argue that removal jurisdiction is proper under the complete preemption doctrine. Complete preemption applies where "the pre-emptive force of a statute is so 'extraordinary' that it 'converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.' " *Caterpillar,* 482 U.S. at 393 (quoting *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 65, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987)). Complete preemption is a "narrow" exception to the well-pleaded complaint rule, *Joyce v. RJR Nabisco Holdings Corp.,* 126 F.3d 166, 171 (3d Cir.1997), and the United States Supreme Court has only applied the doctrine to certain causes of action under the Labor Management Relations Act,

Not Reported in F.Supp.2d
2004 WL 2367828 (E.D.Pa.)
(Cite as: 2004 WL 2367828 (E.D.Pa.))

Page 11

the Employees Retirement Income Security Act, and the National Bank Act *See generally Aetna Health Inc. v. Davila,* --- U.S. ----, ----, 124 S.Ct. 2488, 2495, 159 L.Ed.2d 312 (2004); *Beneficial Nat'l Bank v. Anderson,* 539 U.S. 1, 7-11, 123 S.Ct. 2058, 156 L.Ed.2d 1 (2003). Two prerequisites must be satisfied for the complete preemption doctrine to apply. First, the statute relied upon by the defendant as preemptive must contain "civil enforcement provisions within the scope of which the plaintiff's state claim falls." *Goepel,* 36 F.3d at 311 (quoting *Railway Labor Executives Ass'n v. Pittsburgh & Lake Erie R. Co.,* 858 F.2d 936, 942 (3d Cir.1988)); *see also Railway,* 858 F.2d at 942 ("If the federal statute creates no federal cause of action vindicating the same interest the plaintiff's state cause of action seeks to vindicate, ... there is no claim arising under federal law to be removed and litigated in the federal court."). Second, there must be a clear indication that "Congress intended the federal cause of action to be exclusive." *Beneficial,* 539 U.S. at 9 n. 5.

*5 Defendants argue that Plaintiff's claims are completely preempted by Sections 544(e) and 401(b) of the Federal Communications Act (the "Act"), as amended by the Cable Television Consumer Protection and Competition Act of 1992. Section 544(e) of the Act provides as follows:

Within one year after October 5, 1992, the Commission shall prescribe regulations which establish minimum technical standards relating to cable systems' technical operation and signal quality. The Commission shall update such standards periodically to reflect improvements in technology. *No State or franchising authority may prohibit, condition, or restrict a cable system's use of any type of subscriber equipment ....*

47 U.S.C. § 544(e) (emphasis added). Section 401(b) of the Act creates a private cause of action for enforcement of FCC "orders." The statute provides that:

If any person fails or neglects to obey any order of the [FCC] other than for the payment of money, while the same is in effect, the Commission or any party injured thereby, or the United States, by its Attorney General, may apply to the appropriate district court of the United States for the enforcement of such order. If ... that court determines ... that the person is in disobedience of [the order], the court shall enforce obedience to such order by a writ of injunction or other proper process, mandatory or otherwise, to restrain such

person or the officers, agents, or representatives of such person, from further disobedience of such order, or to enjoin upon it or them obedience to the same.

47 U.S.C. § 401(b). [FN3] The Third Circuit has held that an agency regulation should be considered an "order" under § 401(b) "if it requires a defendant to take concrete actions." *Mallenbaum v. Adelphia Communications Corp.,* 74 F.3d 465, 468 (3d Cir.1996).

> FN3. Neither party disputes that Defendants are "persons" for purposes of § 401(b). *See* 47 U.S.C. § 153(i) (listing categories of entities that the term "person" includes).

Assuming, *arguendo,* that Plaintiff's state law claims may be construed as seeking to prohibit, condition, or restrict Defendants' use of subscriber equipment, the Court cannot conclude that Plaintiff's claims are completely preempted by § 544(e). Section 544(e) does not create a federal cause of action which permits Plaintiff to challenge the use of subscriber equipment by Defendants. Thus, while the express preemption language contained in § 544(e) may afford Defendants an affirmative defense to Plaintiff's state law claims, it does not confer removal jurisdiction under the complete preemption doctrine. *Caterpillar,* 482 U.S. at 393. Moreover, although cable television subscribers may seek injunctive relief under § 401(b) for violations of the "technical standards" regulations promulgated under § 544(e), those regulations are not implicated by Plaintiff's claims in this case.

Defendants also contend that Plaintiff's claims are completely preempted by the regulations promulgated under § 544a(c)(2) of the Act, which require cable system operators to provide consumer education programs on the compatibility of their cable equipment with commercially available converter devices and remote control units. *See* 47 C.F.R. § § 76.630, 76.1622. As these consumer protection regulations require cable system operators to take concrete actions, aggrieved cable subscribers may seek injunctive relief under § 401(b) for a cable system operator's failure to comply with such regulations.

*6 However, even if Plaintiff's claims fall within the scope of the FCC's consumer protection regulations, Defendants have failed to establish that Congress

intended § 401(b) to provide the exclusive cause of action for Plaintiff's state law claims. Section 556(c), the Act's general preemption provision, applies only to state laws that are "inconsistent" with the Act. In this case, Plaintiff's claims rely on state laws that complement, rather than undermine, the consumer protection regulations promulgated under the Act. *See Total TV v. Palmer Communications, Inc.*, 69 F.3d 298, 302 (9th Cir.1995). Moreover, courts in this Circuit have found that Congress's decision to restrict the application of a federal preemption provision to "inconsistent" state laws does not support a finding of complete preemption. *See Goepel*, 36 F.3d at 316 (Stapleton, J., concurring) ("[T]he fact that Congress chose to ... limit the preemptive effect of the [Federal Employees Health Benefits Act to "inconsistent" state laws] is inconsistent with the notion that Congress intended to 'completely' preempt state law"); *Nott v. Aetna U.S. Health Care, Inc.*, 303 F.Supp.2d 565, 573 n. 10 (E.D.Pa.2004) ("The fact that the [Medicare] regulations themselves point out that only inconsistent state laws are preempted necessarily undermines Aetna's position that Congress intended that [the pertinent Medicare statutes] completely preempt all state law causes of action "). The lack of Congressional intent to completely preempt Plaintiff's state consumer protection and related fraud-based claims is reinforced by the savings clause contained in § 552(d)(1) of the Act, which provides that "[n]othing in this subchapter shall be construed to prohibit any State or franchising authority from enacting or enforcing any consumer protection law, to the extent not specifically preempted by this subchapter." 47 U.S.C. § 552(d)(1). The Court concludes, therefore, that none of the provisions cited by Defendant has a preemptive force that is "so extraordinary that it converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Caterpillar*, 482 U.S. at 393 (internal quotations omitted). Accordingly, removal jurisdiction cannot be established under the complete preemption doctrine.

B. *Substantial Federal Question*

Defendants argue that removal jurisdiction is proper under the substantial federal question doctrine. [FN4] "The vast majority of cases brought under the general federal-question jurisdiction of the federal courts are those in which federal law creates the

cause of action." *Merrell Dow Pharm., Inc. v. Thompson*, 478 U.S. 804, 809, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986) (internal quotation omitted). However, federal question jurisdiction is also appropriate where "the vindication of a right under state law necessarily turn[s] on some construction of federal law." *Id.* at 808-09 (quoting *Franchise Tax Bd.*, 463 U.S. at 9); *see also Franchise Tax Bd.*, 463 U.S. at 13 (noting that "original jurisdiction is unavailable unless it appears that some substantial, disputed question of federal law is a necessary element of one of the well-pleaded state claims"). The mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction. *Merrell Dow*, 478 U.S. at 813. Rather, removal is only permitted under the substantial federal question doctrine if federal law is "in the forefront of the case and [is] not collateral, peripheral, or remote ." *U.S. Express Lines*, 281 F.3d at 389 (quoting *Merrell Dow*, 478 U.S. at 813)).

> FN4. In *U.S. Express Lines, Ltd. v. Higgins*, 281 F.3d 383 (3d Cir.2002), the United States Court of Appeals for the Third Circuit ("Third Circuit") noted that the substantial federal question doctrine is not limited to "situation[s] in which federal law completely preempts state law ." *Id.* at 389. Subsequent to *U.S Express Lines*, however, the United States Supreme Court held in *Beneficial* that "a state claim may be removed to federal court in *only two circumstances*--when Congress expressly so provides ..., or when a federal statute wholly displaces the state-law cause of action through complete pre-emption ." *Id* at 8 (emphasis added). Although the Third Circuit has not yet addressed the issue, some courts in other Circuits have suggested that *Beneficial* eliminated the substantial federal question doctrine as an independent basis for removal jurisdiction, even though the case exclusively involved removability under the complete preemption doctrine. *See, e.g., City of Rome, N.Y. v. Verizon Communications, Inc.*, 362 F.3d 168, 176 (2d Cir.2004) (rejecting application of substantial federal question doctrine based on *Beneficial* ); *Burton v. Southwood Door Co., Mea, Inc.*, 305 F.Supp.2d 629, 634 n. 4 (S.D.Miss.2003) ("Whether the presence of a "substantial

Not Reported in F.Supp.2d                                                          Page 13
2004 WL 2367828 (E.D.Pa.)
(Cite as: 2004 WL 2367828 (E.D.Pa.))

federal question' in a given case remains a proper basis for removal would seem somewhat in doubt in light of the Supreme Court's declaration in [*Beneficial* ]"); *Bourke v. Carnahan*, Civ. A. No. C2- 03-144, 2003 WL 23412975, at *3 (S.D.Ohio July 1, 2003) ("By recognizing removal *only* in cases involving a congressional mandate or complete preemption, the [*Beneficial* ] Court arguably eliminated the substantial federal question exception.") (emphasis in original). Because the existence of a substantial federal question was not directly at issue in *Beneficial,* and because the Third Circuit has previously found that the substantial federal question doctrine is not fully subsumed by the complete preemption doctrine, the Court concludes that the substantial federal question doctrine still constitutes an independent basis for removal jurisdiction.

**\*7** Although the Complaint cites various FCC rules and regulations, the Court concludes that a substantial, disputed question of federal law is not a necessary element of Plaintiff's state law claims. The Court notes that Plaintiff's UTPCPL, fraud, and negligent misrepresentation claims will require proof that Defendants acted with a culpable state of mind. *See Giannone v. Ayne Institute,* 290 F.Supp.2d 553, 566-67 (E.D.Pa.2003) (noting that the elements of common law fraud under Pennsylvania law are "(1) a representation; (2) that is material to the transaction at hand; (3) *made falsely, with knowledge of its falsity or recklessness as to whether it is true or false;* (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance") (citation omitted) (emphasis added); *Floyd v. Brown & Williamson Tobacco Corp.,* 159 F.Supp.2d 823 (E.D.Pa.2001) (noting that elements of common law fraud must be proved under sections of the UTPCPL grounded in fraud); *Mill Run Assoc. v. Locke Prop. Co., Inc.,* 282 F.Supp.2d 278, 292 (E.D.Pa.2003) (noting that the elements of negligent misrepresentation under Pennsylvania law are "(1) a misrepresentation of material fact; (2) *made under circumstances in which the misrepresenter ought to have known of its falsity;* (3) with the intent to induce another to act on it; (4) which results in injury to the party acting in justifiable reliance on

the misrepresentation") (emphasis added). [FN5] In pleading his state law claims, therefore, Plaintiff includes several allegations concerning the information known to Defendants during the class period. Among other things, Plaintiff relies on FCC rules and regulations to establish that Defendants knew that members of the Converter Box Class no longer needed to rent converter box equipment to view Basic Programming channels and that members of the Remote Control Class no longer needed to rent remote controls from Defendants to view their subscription channels. The essence of Plaintiff's state law claims is that Defendants, armed with this knowledge, had an affirmative duty under state consumer protection and related fraud-based laws-- independent of Defendants' duties under pertinent FCC rules and regulations--to advise the putative class members that they no longer needed to rent converter box equipment and remote controls and to cease billing the class members for such equipment. Thus, vindication of Plaintiff's rights under state law does not necessarily turn on some construction of federal law. Indeed, a disputed issue of federal law will arise only if Defendants defend against Plaintiff's state law claims on the basis of their compliance with FCC rules and regulations. It is well-settled, however, that "[a] defense that raises a federal question is inadequate to confer federal question jurisdiction." *Merrell Dow,* 478 U.S. at 808. Moreover, to the extent that Plaintiff anticipates this defense by alleging that Defendants violated FCC rules and regulations, it is equally well-settled that the mere anticipation of a federal defense in the Complaint is insufficient to establish removal jurisdiction. *Caterpillar,* 482 U.S. at 393. Accordingly, removal jurisdiction cannot be established under the substantial federal question doctrine.

> FN5. Plaintiff's remaining claims are similarly grounded in Defendants' fraudulent and deceptive conduct.

## IV. CONCLUSION

**\*8** Strictly construing the removal statute and resolving all doubts in favor of remand, the Court concludes that Defendants have failed to meet their burden of establishing removal jurisdiction. Accordingly, Plaintiff's Motion to Remand is granted.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2004 WL 2367828 (E.D.Pa.)
**(Cite as: 2004 WL 2367828 (E.D.Pa.))**

Page 14

An appropriate Order follows.

*ORDER*

  AND NOW, this day of October, 2004, upon
consideration of Plaintiff's Motion to Remand
(Docket No. 7), Defendants' response thereto, and all
related submissions, IT IS HEREBY ORDERED that
the Motion is GRANTED. The above-captioned case
shall be REMANDED to the Court of Common Pleas
for Philadelphia County. All pending Motions are
hereby DISMISSED as moot.

2004 WL 2367828 (E.D.Pa.)

**Motions, Pleadings and Filings (Back to top)**

        2:04CV01777_____(Docket)
(Apr. 23, 2004)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works

**Motions, Pleadings and Filings**

United States District Court,
D. Delaware
Michael WARRINGTON, on his behalf and others
so situate, Plaintiff,
v.
ALLEN FAMILY FOODS, Defendant.
**No. Civ.04-1288-SLR.**

Nov. 30, 2004.
Tasha Marie Stevens, Fuqua & Yori, P.A.,
Georgetown, DE, for Plaintiff.

Matthew F. Boyer, Connolly, Bove, Lodge & Hutz,
Wilmington, DE, for Defendant.

MEMORANDUM ORDER

ROBINSON, J.

*1 At Wilmington this 30th day of November, 2004,
having reviewed plaintiff's motion for remand
(D.I.6) and the papers submitted in connection
therewith (D.I.10, 11);

IT IS ORDERED that said motion is denied for the
reasons that follow:

1. Background. On September 9, 2004, plaintiff
filed a class action complaint in Delaware Superior
Court alleging that defendant violated 19 Del. C. §
1107 by deducting union dues in excess of the
amount authorized by plaintiff. (D.I.1) On
September 21, 2004, defendant filed a notice of
removal pursuant to 28 U.S.C. § § 1441 and 1446,
contending that this court has original jurisdiction
over the matter pursuant to the Labor Management
Relations Act, 29 U.S.C. § 301(a). (Id.) Plaintiff
moved to remand on October 13, 2004. (D.I.6)
Defendant filed a third party complaint against Local
Union No. 355 on October 22, 2004. (D.I.10)
Defendant filed its opposition to the motion to
remand on October 27, 2004. (D.I.11)

2. Standard of Review. An action filed in state court
can be removed by a defendant to a federal district
court if that federal court would have had original

jurisdiction over the action. 28 U.S.C. § 1441(a).
The burden is on the removing party to demonstrate
that federal subject matter jurisdiction exists and
removal is proper. Boyer v. Snap-On Tools Corp.,
913 F.2d 108, 111 (3d Cir.1990).

A motion to remand based on lack of subject matter
jurisdiction may be made at any time before final
judgment is entered. 28 U.S.C. § 1447(c). Removal
statutes are to be "strictly construed against removal
and all doubts resolved in favor of remand." Steel
Valley Auth. v. Union Switch & Signal Div., 809
F.2d 1006, 1010 (3d Cir.1987).

3. Discussion. Plaintiff asserts that this court lacks
original jurisdiction as the matter seeks redress
under applicable state statute, 19 Del. C. § 1107,
and is not preempted by the Labor Management
Relations Act ("the Act"), 29 U.S.C. § 141. (D.I.6)
The Act provides:

It is the purpose and policy of this chapter, in
order to promote the full flow of commerce, to
prescribe the legitimate rights of both employees
and employers in their relations affecting
commerce, to provide orderly and peaceful
procedures for preventing the interference by
either with the legitimate rights of the other, to
protect the rights of individual employees in their
relations with labor organizations whose activities
affect commerce, to define and proscribe practices
on the part of labor and management which affect
commerce and are inimical to the general welfare,
and to protect the rights of the public in
connection with labor disputes affecting
commerce.

29 U.S.C. § 141(b). Plaintiff contends that the
cause of action implicates state law, specifically 19
Del. C. § 1107, [FN1] which provides, in relevant
part:

FN1. The accompanying penalty statute, 19
Del. C. § 1112, provides for civil causes of
action.

No employer may withhold or divert any portion
of an employee's wages unless: (1) the employer is
required or empowered to do so by state or federal
law; or (2) the deductions are for medical, surgical
or hospital care or service, without financial
benefit to the employer, and are openly, clearly

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2004 WL 2730215 (D.Del.), 176 L.R.R.M. (BNA) 3279
**(Cite as: 2004 WL 2730215 (D.Del.))**

and in due course recorded in the employers' books; or (3) the employer has signed authorization by the employee for deductions for a lawful purpose accruing to the benefit of the employee ...

**\*2** Defendant argues that the Act clearly preempts state law claims where resolution of the state law claim is substantially dependent upon an analysis of the terms of an agreement made between the parties in a labor contract. *See Allis-Chalmers Corp. v. Lueck,* 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985). Defendant avers that there was a Collective Bargaining Agreement ("CBA") in place that governs the terms and conditions of plaintiff's employment. (D.I.10, Ex. 2) Since plaintiff's claims require an interpretation of terms in the CBA, defendant contends preemption applies.

4. Conclusion. Paragraph two of the CBA explicitly provides for deduction of wages from an employee's paycheck for labor union dues. (D.I.10, Ex. 2) Because plaintiff's complaint challenges the number and date of those CBA deductions, his claims are preempted and remand to state court is inappropriate. *See generally Antol v. Esposito,* 100 F.3d 1111, 1115-1116 (3d Cir.1997); *Lingle v. Norge Div. Of Magic Chef Inc.,* 486 U.S. 399, 410-411, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988).

2004 WL 2730215 (D.Del.), 176 L.R.R.M. (BNA) 3279

**Motions, Pleadings and Filings (Back to top)**

> 1:04CV01288_____(Docket)

(Sep. 21, 2004)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works