IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DAKOTA IMAGING, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No:     1:05-CV-296 (SLR) |
| ) | |
| SANDEEP GOEL AND ) | JURY TRIAL DEMANDED |
| PRADEEP GOEL ) | |
| ) | |
| Defendants/Counterclaim- ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| DAKOTA IMAGING, INC., ) | |
| ENVOY CORPORATION, AND ) | |
| WEB MD CORPORATION, ) | |
| ) | |
| Counterclaim-Defendants. ) | |
| ) | |

## OPPOSITION TO COUNTERCLAIM-DEFENDANTS ENVOY CORPORATION AND WEBMD CORPORATION'S MOTION TO STAY DISCOVERY

Defendants/Counterclaim-Plaintiffs, Sandeep Goel and Pradeep Goel (the "Goels"), by their attorneys, hereby oppose the Motion to Stay Discovery filed by Counterclaim-Defendants, Envoy Corporation and WedMD Corporation ("Envoy," and "WebMD," respectively). As grounds for this Opposition, the Goels state as follows:

1.      As set forth more fully in their Counterclaim, this action arises from a series of inter-related transactions, which culminated in the purchase of Dakota Imaging, Inc. ("Dakota"), by WebMD and Envoy, formalized in a Merger Agreement on April 5, 2004. *See Merger Agreement, attached as Exhibit 1 to Counterclaim.* The Merger Agreement involved multiple parties, including WebMD, Envoy, Dakota and the Goels and multiple sub-agreements, including the Employment Agreements of Sandeep Goel and Pradeep Goel. In particular, the

Employment Agreements of the Goels were not only required to be executed under the terms of the Merger Agreement, but they were specifically attached thereto.

2.      Per the terms of the Goels' Employment Agreements, both Sandeep Goel and Pradeep Goel were to be employed for the initial employment period of five years. The Employment Agreements also contained specific provisions delineating under what circumstances the Goels could be terminated for cause, and without cause, following the expiration of an "earnout period" set forth in the Merger Agreement. By its express terms, the Employment Agreement did not allow for the termination of either Sandeep Goel or Pradeep Goel without cause until the earnout period had expired, after March 31, 2007.

3.      Notwithstanding those provisions, on April 6, 2005, before the end of the earnout period and without cause, both Sandeep Goel and Pradeep Goel were summarily terminated. Count I of the Goels' Counterclaim is specifically directed at that action and seeks to recover all damages that reasonably flow therefrom.

4.      At the same time, the Goels executed their Employment Agreement, they also executed the Merger Agreement. Under the terms of the Merger Agreement, Dakota was sold by the Goels and other shareholders to WebMD and Envoy for $40,000,000, with certain adjustments, plus up to an additional $25,000,000 based on increases in Dakota's earnings during a three-year "earnout period" following the closing. The Merger Agreement and the Employment Agreement provide that the Goels would continue to serve as employees and as officers of Dakota after the merger.

5.      In accordance with the Merger Agreement, the acquiring companies promised to pay the Goels and other Dakota shareholders an earnout payment of up to $25,000,000 over a three-year period. However, shortly after the merger was completed, WebMD management

started taking a series of actions that seriously undermined the ability of the Goels to achieve the targets necessary to receive the "earnout."

6.    As described more fully in the Goels' Counterclaim, following the merger, WebMD management and others acting on its behalf, took numerous actions that undermined the ability of the Goels to perform their duties for Dakota. WebMD dismantled Dakota's management team in January of 2005, and summarily terminated Ron Deigleman who had served as Senior Vice President and Chief Financial Officer of Dakota prior to the acquisition, and continuing as Senior Vice President up to his termination. Deigleman was replaced by John McCray, who reported directly to WebMD personnel, but knew nothing about Dakota's business. Other management changes were instituted, again, over the objection of the Goels, including initiating significant corporate changes and terminating other key employees. The ultimate termination of the Goels on April 6, 2005, for false reasons, was the final effort in the campaign by WebMD, Envoy and Dakota to effectively prevent the Goels from recovering their earnout payments of up to $25,000,000. Counts II and III of the Goels' Counterclaim are directed to redress these harms and recover all related damages as a result of those actions.

7.    In response to the Goels' Counterclaim, WebMD, Envoy and Dakota have filed a blizzard of preliminary motions, suggesting that their initial lawsuit against the Goels only involved the Goels' Employment Agreements and their purported breaches of those Agreements. However, that Complaint was not limited to the Employment Agreement, but, in fact, alleged claims under the Merger Agreement, which was executed by Dakota, WebMD and Envoy.[1] Indeed, Count III of the Complaint specifically identifies claims under the Merger Agreements.

---

[1] Moreover, the stated reason why the initial Complaint was filed in the Chancery Court in Delaware was based on a clause in the Merger Agreement. *See ¶ 6, Dakota Complaint.*

8.    Despite the fact that Dakota has included in its own Complaint, claims arising under the Merger Agreement that was executed by WebMD and Envoy, and that the Goels have raised a number of significant claims against Dakota and its corporate parent, Envoy and WebMD, as to their collective actions in causing harm to the Goels involving breaches of the Employment Agreements and  the Merger Agreement, in the instant Motion, WebMD and Envoy are seeking to limit the Goels' ability to conduct any discovery regarding those claims against WebMD and Envoy.

9.    Contrary to the characterizations offered by WebMD and Envoy, the disputes at issue in this litigation involve a series of inter-related transactions, agreements, and conduct on the part of WebMD, Envoy and Dakota.  Discovery should not be limited to one specific document or type of conduct in this very complicated and convoluted transaction.  Indeed, what WebMD and Envoy have requested is a complete bar to any discovery against them, even though both are signatories to the Merger Agreement, which is the basis of at least one of Dakota's claims in this litigation.

10.    In support of their request for a complete stay discovery against them in this case, Envoy and WebMD have suggested several reasons, none of which can withstand close scrutiny. For example, they suggest that because they have filed a Dispositive Motion to Dismiss, that, in and of itself, constitutes good cause to stay all discovery against WebMD and Envoy.[2]  However, as noted above, this dispute is larger than simply the termination of Sandeep Goel and Pradeep Goel by Dakota.  Indeed, in the initial Complaint filed by Dakota, Dakota raised claims under the Merger Agreement, which was executed by WebMD, as well as Envoy.  Moreover, as alleged by the Goels, the summary termination by Dakota without cause was but one part of an overall

---

[2]  The Goels have opposed the Motion to Dismiss and further explained the factual and legal basis of their claims against WebMD and Envoy and why they should be permitted to conduct discovery against WebMD, Envoy and Dakota as to those claims.

scheme by Dakota, WebMD and Envoy, all signatories to the Merger Agreement and all acting in concert to prevent the Goels from receiving any of the earnout payments.

11.     In order to discover relevant evidence or other evidence that will lead to the discovery of relevant evidence concerning these issues, the parties will necessarily need to explore the Goels' job performance and interactions, not simply with Dakota, but Envoy and WebMD, and the actions taken by Envoy, WebMD and Dakota to interfere with the Goels' ability to fully perform their job duties and responsibilities, ultimately leading up to their summary termination for false reasons.

12.     The Goels intend to recover all appropriate damages sustained as a result of these alleged wrongful acts by Dakota, Envoy and WebMD. Such damages would include lost pay, bonuses, and other benefits, as well as the lost earnout amounts.

13.     Simply because there is a narrow arbitration provision contained in the Merger Agreement, *See Merger Agreement, § 1.7*, that does not mean that the Goels' claims in this litigation cannot proceed or that discovery related to those claims is inappropriate. As discussed more fully in the Goels' Opposition to the Motion to Dismiss Counterclaims Against Envoy and WebMD, the arbitration provision in the Merger Agreement is very narrow and limited to how the earnout is to be completed, quite dissimilar to the issues that are presented in this litigation.

14.     Envoy and WebMD also suggest that the length of the requested stay, until the Court rules on the pending Motions to Dismiss, is reasonable. Again, such a suggestion ignores the fact that the Court may very well have a heavy docket of other pending matters, and may not be able to consider these Motions for several months. During that time, the Goels would be prevented from discovering relevant evidence related to their claims in this litigation. Even if the Court were to grant the Motion to Dismiss filed by Envoy and WebMD in its entirety, that fact

would not limit in any considerable manner the scope of the discovery related to the Goels'

termination from employment and the damages that they are entitled to recover as a result of that

termination. As already noted above, the Merger Agreement and all of the signatories to that

Agreement, including WebMD and Envoy, are in this litigation by virtue of Dakota's initial

Complaint against the Goels. At a minimum, the Goels should be permitted to conduct

reasonable discovery related to the claims raised in that initial litigation, which includes the

Merger Agreement, as well on their own counterclaims against not only Dakota, but WebMD

and Envoy, as the Goels contend, all three were acting in concert.

15.     Envoy and WebMD also claim that there would be no prejudice to the Goels if the

Court were to grant a stay of discovery, as requested. Quite to the contrary, the Goels would be

severely prejudiced because they would be prevented from engaging in reasonable discovery

related not only to the issues raised in Dakota's initial Complaint, but also on their

Counterclaims. WebMD and Envoy are not seeking to narrow the scope of discovery, they are

seeking to eliminate it entirely. If a stay were granted, it is quite possible that during the course

of discovery, witnesses would have to be re-deposed and interrogatories and document requests

re-served depending upon the Court's ruling on the pending Motions to Dismiss. It would be

more expedient and economical for all parties, if deponents could be examined about all of the

claims in this litigation in one sitting rather than have them answer only a few selected questions

with the possibility of returning to answer others at a later date.

16.     Envoy and WebMD also suggest that the Goels will necessarily propound overly

broad discovery, that they (WebMD and Envoy) will bear a significant burden if discovery is not

stayed, and that they have "strong" arguments in their respective Motions to Dismiss. None of

those purported justifications are sufficient to stay all discovery against WebMD and Envoy in

this case. If the discovery requests propounded by any party in this litigation are overbroad, unreasonable or otherwise objectionable, counsel can make the appropriate objections at that time. Moreover, to suggest that the Goels' discovery requests will put a significant burden on Envoy and WebMD is hard to follow. The Goels are two individuals who were fired without reason. Envoy and WebMD are large, financially solvent corporations that would appear to be far better equipped to handle discovery and other related matters than the Goels. Finally, simply because a party believes that it has "strong arguments" in its Motion to Dismiss, that belief does not mandate that all discovery against that party should be stayed.[3] It is not uncommon for parties to file motions to dismiss; it is uncommon to stay all discovery against that party whenever a motion to dismiss is filed.

WHEREFORE, the Goels respectfully request that the Court deny the Motion by Envoy and WebMD to stay all discovery against them pending the Court's ruling on their Motion to Dismiss.

Respectfully submitted,

YOUNG CONAWAY STARGATT & TAYLOR, LLP

Michael P. Stafford, Esquire (No. 4461)
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware 19899-0391
Telephone: (302) 571-6553
Facsimile: (302) 576-3461
Email: mstafford@ycst.com

*Attorneys for Defendants Counterclaim Plaintiffs Sandeep Goel and Pradeep Goel*

---

[3] As noted above, the Goels have, in their opinion, presented "strong" arguments in opposition to the WebMD/Envoy Motion to Dismiss. The ultimate decision on that Motion, however, is for the Court, not counsel.

OF COUNSEL:
Ward B. Coe, III, Esquire
Kevin C. McCormick, Esquire
Whiteford, Taylor & Preston L.L.P.
Seven Saint Paul Street, Suite 1300
Baltimore, Maryland 21202-1626
(410) 347-8700
wcoe@wtplaw.com
kmccormick@wtplaw.com

Dated:  June 28, 2005

## CERTIFICATE OF SERVICE

I hereby certify that on June 28, 2005, I electronically filed a true and correct copy of the foregoing Defendants/Counterclaim-Plaintiffs' Opposition to Counterclaim-Defendants Envoy Corporation and WebMD Corporation's Motion to Stay Discovery, and proposed Order, with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

Jesse A. Finkelstein
Michael R. Robinson
RICHARDS LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware  19801

I further certify that on June 28, 2005, I caused a copy of the foregoing Defendants/Counterclaim-Plaintiffs' Opposition to Counterclaim-Defendants Envoy Corporation and WebMD Corporation's Motion to Stay Discovery, and proposed Order, to be served by hand-delivery on the following counsel of record:

Jesse A. Finkelstein
Michael R. Robinson
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware  19801

I further certify that on June 28, 2005, I served the foregoing Defendants/Counterclaim-

Plaintiffs' Opposition to Counterclaim-Defendants Envoy Corporation and WebMD

Corporation's Motion to Stay Discovery, and proposed Order, on the following non-registered

participants by first-class United States mail:


Harry T. Daniels, Esquire
Richard A. Johnson, Esquire
Cytheria D. Jernigan, Esquire
WILMER CUTLER PICKERING HALE AND DORR
60 State Street
Boston, Massachusetts 02109


YOUNG CONAWAY STARGATT & TAYLOR, LLP


Michael P. Stafford, Esquire (No. 4461)
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware  19899-0391
Telephone:    (302) 571-6553
Facsimile:    (302) 576-3461
Email:        mstafford@ycst.com


Dated:  June 28, 2005