# Exhibit 1

# to Motion for Leave to File

# Supplement to Reply Briefs

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DAKOTA IMAGING, INC., | ) |
|       Plaintiff/Counterclaim Defendant, | ) Civil Action No. 1:05-CV-296 (SLR) |
| v. | ) JURY TRIAL DEMANDED |
| SANDEEP GOEL and PRADEEP GOEL, | ) |
|       Defendants/Counterclaim Plaintiffs, | ) |
| v. | ) |
| DAKOTA IMAGING, INC., ENVOY CORPORATION, and WEB MD CORPORATION, | ) |
|       Counterclaim Defendants | ) |

**SUPPLEMENT TO THE REPLY BRIEFS OF DAKOTA IMAGING, INC. (D.I. 43), ENVOY CORPORATION AND WEBMD CORPORATION (D.I. 42) IN SUPPORT OF THEIR MOTIONS TO DISMISS COUNTERCLAIM**

Plaintiff/Counterclaim Defendant Dakota Imaging, Inc. ("Dakota") and Counterclaim Defendants Envoy Corporation ("Envoy") and WebMD Corporation ("WebMD") submit this joint supplement to their Reply Briefs in support of their motions to dismiss (D.I. 9 and D.I. 7, respectively) the Counterclaim asserted by Sandeep Goel and Pradeep Goel (collectively, the "Goels").[1] As explained below, there have been new developments in this matter since the filing of the Reply Briefs which further buttress the motions to dismiss and related motions to stay

---

[1] Envoy and WebMD jointly moved to dismiss the Goels' Counterclaim in its entirety (D.I. 7). Dakota moved separately to dismiss only those portions of the Goels' Counterclaim which relate to Earnout payments under the Merger Agreement (D.I. 9).

discovery Specifically, the Goels recently initiated the Merger Agreement's mandatory arbitration process for disputes between the parties regarding potential Earnout payments from Envoy This step further demonstrates that those portions of the counterclaim relating to the Goels' purported rights to Earnout payments should not be subject to litigation.

## RECENT DEVELOPMENTS

As detailed in the parties' briefing in this matter, Section 1 7(c) of the Merger Agreement, entitled "Dispute Resolution," contains a two-page explanation of the process by which disputes related to the Earnout are to be resolved The process includes: (i) a calculation by Envoy of the amount of Earnout payable to the Goels for the year in question and written notice to the Goels of the calculation; (ii) a written statement by the Goels of any disagreement with Envoy's Earnout calculation, (iii) discussion between the parties regarding the Goels' disagreement; (iv) submission of the disagreement as to the calculation of the Earnout to the Independent Accountants; and (v) submission of any disputes not resolved by the Independent Accountants to final, binding arbitration before an American Arbitration Association ("AAA") arbitrator. See Reply Of Envoy And WebMD In Support Of Their Motion To Dismiss Counterclaim, (D I 42 at 8-9)

On June 20, 2005, pursuant to Section 1 7(c) of the Merger Agreement, Envoy submitted to the Goels an Earnout Certificate containing a calculation of the Earnout payment for the 12-month period ending March 31, 2005. The Earnout Certificate, annexed hereto as Exhibit A, indicates that the Goels are not entitled to Earnout payments because Dakota failed to achieve any increase in earnings in the first year after the closing of the Merger Agreement On July 11,

2

2005,[2] the Goels, in accordance with the terms of Section 1.7(c), sent Envoy written notice (the "Notice of Disagreement") that it disagreed with the Earnout calculation, triggering the Merger Agreement's dispute resolution process described above. The Goels' Notice of Disagreement is annexed hereto as Exhibit B.

## ARGUMENT

As the Notice of Disagreement makes clear, the Goels are attempting to use their Counterclaim to litigate issues which must be resolved by the Merger Agreement's alternative dispute resolution process.

In their Notice of Disagreement, the Goels' stated reasons for challenging the Earnout calculation are Envoy's alleged failure to properly credit Dakota with: (i) a $7.8 million software sale to a third party customer in March 2005 (the "Noridian Contract"); and (ii) a $6.5 to $8 million[3] software sale to Envoy (the "HIPAA Bypass Project"). [Notice of Disagreement, ¶¶ 2 and 4]. The Goels contend that the proper calculation of Dakota's earnings would have resulted in an $8.33 million Earnout payment to the Goels and the former shareholders of Dakota. [Id., ¶ 3]. The $8.33 million amount sought by the Goels is the maximum possible payment for the first year under the Merger Agreement. [Merger Agreement, § 1.7(a)]

In their Counterclaim, the Goels claim similarly that Dakota, Envoy and WebMD interfered with their right to an Earnout by: (i) trying to obstruct and delay the execution of the $7.8 million Noridian Contract [Counterclaim, ¶¶ 19-21]; and (ii) failing to properly account for

---

[2] The first page of the Notice of Disagreement is dated July 8, 2005, but the header on the second page of the notice bears the date of July 11, 2005 and Envoy received it on July 12, 2005. Thus, Dakota, Envoy and WebMD received the Notice of Disagreement too late to reference it in their Reply Briefs, which were due and filed on July 11, 2005.
[3] The Notice of Disagreement does not specifically allege how much credit the Goels should have received for the HIPAA Bypass Project, but the Goels' Counterclaim specifically alleges that the proper credit would be in the range of $6.5 to $8 million. [Counterclaim, ¶ 54]

3

$6.5 to $8 million in revenue related to the HIPAA Bypass Project. [Id., ¶ 54] Based largely upon these alleged acts, the Goels claim damages of $8.33 million for the first year of the Earnout period [Id., ¶ 50, 55], the maximum possible payment under the Merger Agreement [Merger Agreement, § 1.7(a)].

As such, the Goels have brought before the Court issues which, as they acknowledge in their Notice of Disagreement, are required to be decided by the Merger Agreement's alternative dispute resolution process. Moreover, if the alternative dispute resolution process determines that Dakota deserved $7.8 million in revenue credit for the Noridian Contract and $6.5 to $8 million in revenue credit for the HIPAA Bypass Project, the Goels will be entitled to, and receive, the maximum Earnout for year one of the Earnout period and there will be no basis for counterclaim damages in this action. Conversely, if the alternative dispute resolution process finds that Envoy properly accounted for the Noridian Contract and the HIPAA Bypass Project, the parties will be bound by such a decision under the terms of the Merger Agreement. Either way, it is evident that the existence of the comprehensive arbitration procedure utilizing Independent Accountants and AAA arbitrators, as well as the Goels' invocation of the procedure, requires dismissal of the Counterclaim insofar as it relates to Earnout payments.

4

## CONCLUSION

For the reasons set forth above and in the Counterclaim Defendants' prior Briefs, the Court should dismiss the Earnout-related portions of the Goels' counterclaim against Dakota, Envoy and WebMD.[4]

                        /s/ *signature*
                        Jesse A. Finkelstein (DSBA 1090)
                        Michael R. Robinson (DSBA 4452)
                        RICHARDS, LAYTON & FINGER, P.A.
                        One Rodney Square
                        920 N. King Street
                        Wilmington, Delaware 19801
                        (302) 651-7700
                        finkelstein@rlf.com
                        robinson@rlf.com

                        *Counsel for Plaintiff and Counterclaim Defendant Dakota Imaging, Inc., and Counterclaim Defendants WebMD Corporation and Envoy Corporation*

Of Counsel:

Harry T. Daniels
Richard A. Johnston
Mark A. Delaney
Cytheria D. Jernigan
WILMER CUTLER PICKERING
HALE AND DORR LLC
60 State Street
Boston, MA 02109
(617) 526-6000

Date: <u>July 19, 2005</u>

---

[4] Envoy and WebMD also continue to urge the Court to dismiss those portions of the Goels' counterclaim related to the Goels' Employment Agreements because Envoy and WebMD were not parties to these agreements. See Reply Brief Of Envoy And WebMD In Support Of Their Motion To Dismiss Counterclaim, (D.I. 42 at 2-5).

# Exhibit A

## to

# Supplement to Reply Briefs



**Envoy**
Envoy Corporation
669 River Drive, Center Two
Elmwood Park, NJ 07407
Phone: 201-703-3400
Fax: 201-703-3401
www.envoy.com

June 20, 2005

**BY FEDEX**

Sandeep Goel and Pradeep Goel, as Stockholder Representatives
c/o Sandeep Goel
7700 NE 8th Way
Boca Raton, FL 33487

Re: *Calculation of Contingent Payment for the 12-Month Period Ended March 31, 2005*

Gentlemen:

In accordance with the provisions of Section 1.7 of the Agreement and Plan of Merger referred to in the attached Officer's Certificate (the "Merger Agreement"), I am transmitting that Officer's Certificate to you in your capacity as Stockholder Representatives pursuant to Section 1.14 of the Merger Agreement. As contemplated by Section 1.7 of the Merger Agreement, the Officer's Certificate attaches a calculation of the contingent Payment for the 12-month period ended March 31, 2005.

Please direct all correspondence relating to the Officer's Certificate and the calculation of the contingent payment to the undersigned at the following address:

Michael Glick
WebMD Envoy
669 River Drive Center 2
Elmwood Park, NJ 07407

Very truly yours,

Michael B. Glick
Senior Vice President and
General Counsel

## ENVOY CORPORATION

### Officers' Certificate

Reference is made to the Agreement and Plan of Merger (the "Merger Agreement") dated as of April 5, 2004 by and among WebMD Corporation, Envoy Corporation, Raven Merger Sub, Inc., Dakota Imaging, Inc., Sandeep Goel and Pradeep Goel and Carol Gupta and The EAC Investment Limited Partnership. In accordance with the provisions of Section 1.7 of the Merger Agreement, this Certificate is being provided to the Sandeep Goel and Pradeep Goel in their capacity as Stockholder Representatives pursuant to Section 1.14 of the Merger Agreement. Except as otherwise indicated, capitalized terms used in this Certificate and defined in the Merger Agreement will have the meanings given in the Merger Agreement.

The undersigned, Richard Alston, Chief Financial Officer of the Buyer, does hereby certify, on behalf of the Buyer, that the calculation of the Contingent Payment for the 12-month period ended March 31, 2005, as set forth in Annex A hereto, was made in accordance with the terms of Section 1.7 of the Merger Agreement.

IN WITNESS WHEREOF, I have executed this Certificate as of the 20th day of June, 2005.

By: _____
Richard Alston
Senior Vice President and
Chief Financial Officer

# Annex A

June 20, 2005

## Dakota Imaging, Inc.
### Calculation of Contingent Payment

Consolidated
($'s in 000's)

|  | For the Twelve Months Ended March 31, 2005 |
|---|---:|
| Revenue (1) | $ 17,065 |
| Cost Of Goods Sold | 3,189 |
| Operating Expenses | 14,569 |
| Operating Income | (694) |
| Interest (Income)/Expense | 139 |
| Other Income | (22) |
| Depreciation | 431 |
| Amortization | 1,990 |
| Pre-Tax Income | (3,232) |
| Taxes | 0 |
| Net Income | $ (3,232) |
| *Adjustments to Net Income to Calculate EBITDA:* | |
| Interest (Income)/Expense | 139 |
| Taxes | 0 |
| Depreciation | 431 |
| Amortization | 1,990 |
| EBITDA | (672) |
| *Earn-Out calculation:* | |
| EBITDA | $ (672) |
| EBITDA Adjustments: | |
| Bundled Offering (2) | 0 |
| Adjusted EBITDA | (672) |
| Minimum EBITDA Hurdle (per agreement) | 4,437 |
| Incremental EBITDA | 0 |
| Earn-Out multiple | 5.00 |
| Earn-Out Payment for Earn-Out Year 1 | 0 |

*(1) - Revenue includes:*

$825 of HIPAA By Pass revenue billed by Dakota To WebMD Business Services

$464 of recognized revenue from the approximate $7.3 million March 2005 tranactions with Noridian Administrative Services,LLC. The balance of approximately $6.8 million was deferred pursuant to the requirements of the applicable accounting standards to give effect to the discounting of the perpetual master maintenance agreement.

*(2) - "Bundled Offering" Adjustment*

There were no bundled offerings that included claim scrubbing products (Health Claim Expert)

# Exhibit B

## to

# Supplement to Reply Briefs

210 WEST PENNSYLVANIA AVENUE
TOWSON, MARYLAND 21204-4515
TELEPHONE 410 832-2000
FAX 410 832-2015

20 COLUMBIA CORPORATE CENTER
10420 LITTLE PATUXENT PARKWAY
SUITE 495
COLUMBIA, MARYLAND 21044-3528
TELEPHONE 410 884-0700
FAX 410 884-0719

KEVIN C. MCCORMICK
DIRECT NUMBER
410 347-8779
kmccormick@wtplaw.com

# WHITEFORD, TAYLOR & PRESTON L.L.P.

SEVEN SAINT PAUL STREET
BALTIMORE, MARYLAND 21202-1626
410 347-8700
FAX 410 385-0626
www.wtplaw.com

1025 CONNECTICUT AVENUE, NW
WASHINGTON, D.C. 20036-5405
TELEPHONE 202 659-6800
FAX 202 331-0573

115 ORONOCO STREET
ALEXANDRIA, VIRGINIA 22314-1685
TELEPHONE 703 836-5742
FAX 703 836-3558

July 8, 2005

**Via Federal Express**
Michael Glick, Esquire
General Counsel
WebMD Envoy
669 River Drive Center 2
Elmwood Park, NJ 07407

    Re:    Disagreement With Calculation of Contingent Payment
              For the 12-Month Period Ending March 31, 2005

Dear Mr. Glick:

        On behalf of Sandeep Goel and Pradeep Goel, as Stockholder Representatives, and pursuant to Section 1.7(c) of the Agreement and Plan of Merger by and among WebMD Corporation ("WebMD"), Envoy Corporation ("Envoy"), Raven Merger Sub, Inc., Dakota Imaging, Inc. ("Dakota"), Sandeep Goel and Pradeep Goel and Carol Gupta and the EAC Investment Limited Partnership, dated April 5, 2004 ("Merger Agreement"), this letter shall serve as written notice of disagreement with the amount of the Earnout Payment set forth in the Earnout Certificate that was delivered to the Goels on June 21, 2005.

        In particular, the Stockholder Representatives contend that the calculation of the Earnout Payment was not in accordance with Section 1.7 of the Merger Agreement because it did not properly recognize approximately $7.8 million in sales--sales that were sold, fully delivered, accepted and substantially paid for by the clients in March 2005. By failing to recognize this amount ($7.8 million) in March, the Earnout Computation is flawed as it ignored the past practice at Dakota for recognizing such sales when they were delivered, accepted and paid for, and is contrary to the relevant American Institute of Certified Public Accountants ("AICPA") standards and United States Generally Accepted Accounting Principles ("GAAP") addressing how such software sales are to be recognized as revenue.

<u>Via Federal Express</u>
Michael Glick, Esquire
General Counsel
July 11, 2005
Page 2

If those sales ($7.8 million) were properly recognized in accordance with the past practice at Dakota, and in accordance with relevant AICPA standards and GAAP rules, then the Earnout Amount would have been approximately $8.33 million and not zero, as calculated.

Further, during the first earnout period Dakota sold to WebMD Business Services certain software which is referred to as the "HIPAA Bypass Project." A revenue credit for the services of installing this software was recorded in the financial statements but we are unable to determine whether a revenue credit was recorded for the selling price of the software which under the Merger Agreement was to be determined. Also, after the installation of the software WebMD Business Services should have credited revenue to Dakota for the on-going maintenance of the system but we cannot determine, from the information provided, that this credit has been recorded.

Pursuant to Section 1.7(a) of the Merger Agreement, the Stockholder Representatives, along with their professional advisors, request reasonable access to the books and records of Dakota to confirm how the Earnout Payment was calculated. Please advise as to the available times when these materials would be available for review.

Finally, the fact that the Stockholder Representatives have served their written notice of disagreement regarding the calculation of the Earnout shall in no way be considered a waiver of any other claims that they may have against WebMD, Envoy and/or Dakota, or in any way have any effect as an admission, waiver or estoppel on any pending litigation between Sandeep Goel, Pradeep Goel, the former stockholders and Dakota, WebMD and/or Envoy.

Sincerely yours,

Kevin C. McCormick
On Behalf of
Sandeep Goel
Pradeep Goel
Former Stockholder Representatives

KCM:lpb

<u>**Via Federal Express**</u>
Michael Glick, Esquire
General Counsel
July 11, 2005
Page 3

Cc:  WebMD Corporation
     Attention: Chief Financial Officer

     Wilmer, Cutler, Pickering, Hall & Dorr, LLP
     Attention: Richard A. Johnson, Esquire

1627391.V2